**Patricia Ann SCOTT as Next Friend for J.L.R., Appellant,**

v.

**Randy J. BUTCHER, Appellee.**

**No. 12–94–00112–CV.**

Court of Appeals of Texas, Tyler.

Nov. 30, 1994.

Rehearing Overruled Jan. 11, 1995.

---

1. The court of appeals' opinion erroneously identifies *Cain* as a "writ refused" case.

Robert A. Ray, Tyler, for appellant.

Keith W. Starr, Tyler, for appellee.

HOLCOMB, Justice.

J.L.R., a child under the age of ten (10), was allegedly sexually abused approximately ten (10) times from late December 1990 until March 6, 1992, while at the home of Robert Roy Butcher and his brother, Appellee Randy Butcher ("Randy"). The alleged abuser was Robert Roy Butcher. Patricia Ann Scott ("Scott"), J.L.R.'s grandmother, brought suit as next friend against Randy under two theories. First, she claims that Randy was guilty of negligence per se in violation of Chapter 34 of the TEXAS FAMILY CODE.[1] Second, Scott asserts, under common law negligence, that Randy had a duty to stop the abuse or report it. A summary judgment denying relief to Scott was granted in favor of Randy. We will reverse and remand.

In Scott's live pleadings, she alleged:

. . . . .

4. From late December of 1990 to March 6, 1992, ROBERT ROY BUTCHER, the brother of DEFENDANT [Appellee] and the co-owner of the house at 307 Dayton, Tyler, Texas, had sexual contact with J.L.R. who is a minor female under the age of ten, at his residence at 307 Dayton, Tyler, Texas. The events occurred more than ten times and they all occurred at the home of DEFENDANT. DEFENDANT knew or in the exercise of reasonable care should have known of the abuse and wholly failed to take corrective action. DEFENDANT failed to make a reasonable effort to prevent the sexual abuse of J.L.R. and failed to report the abuse. Furthermore, DEFENDANT failed to take action to prevent the abuse when he knew or should have known that J.L.R. might be injured by the conduct of DEFENDANT'S brother. The criminal conduct of Defendant's brother, Robert Butcher, was a foreseeable result of Defendant's negligence. Defendant had a duty to prevent the injuries to J.L.R. because it reasonably appeared or should have reasonably appeared to Defendant that J.L.R., in the exercise of her lawful rights, may be or would be injured.

Additionally, Scott alleged that the acts were in violation of Chapter 34 which requires the reporting of child abuse. Randy moved for summary judgment on the ground that Chapter 34 could not serve as a basis for a claim of negligence per se, and further, on the ground that he owed J.L.R. no common law duty.

Among other items attached to the motion for summary judgment, was Randy's affidavit in which he denied any knowledge of the abusive acts. He stated that he and Robert had moved into the 307 Dayton Street house in December 1990, and then he moved out in March 1991 to go to his mother's home in Cypress, Texas, where he graduated from high school in May 1991. He points out that his father died on July 7, 1990, and the probated will provided that upon his death the entire estate was bequeathed to Randy and Robert Butcher in equal shares, and further provided that in the event Randy had not yet reached the age of 25, Randy's share would go to Danny Butcher, his uncle, in trust until Randy did turn 25. The trust provided that "his share be used for the maintenance, education or support of my son, Randy Joel Butcher, according to the absolute discretion of the above-named trustee." Randy was under the age of 25 at the time of the alleged abuse. Also attached to the affidavit were copies of the will, order admitting it to probate, and an inventory which listed

1. Throughout this opinion, Chapter 34 is in reference to the *Texas Family Code.*

the house at 307 Dayton Street. He also stated he had not lived at this house when the alleged abuse occurred.

In response to Randy's motion for summary judgment, Deborah Lewis [2] stated in an affidavit that she personally knew Randy, having seen and met him on several occasions at his house at 307 Dayton during the time of the acts alleged in the suit. Randy and his brother argued a lot with Randy calling Robert a "child molester," telling him he should not have children at the house, and that he was spending too much time with J.L.R.

Scott's attorney, through an affidavit, presented evidence which reflected that a homeowner's insurance policy was issued in which both Robert Roy Butcher and Randy Butcher were the named insured.

An affidavit was made by Ricky Dale Weesner who characterized himself as a friend of J.L.R.'s. He stated that he knew Randy and his brother Robert, and was often at their home during the period of December 1991 through March 1992. During that time, Randy and his brother Robert fought frequently. Randy called his brother a "child molester" and "pervert," and accused him of being "sick." Weesner heard Randy tell his brother that J.L.R. should not be sitting in Robert's lap. Randy told Robert that he and J.L.R. were "too close" and that she should not be "sleeping" with him. Randy had told Robert the things that Robert and J.L.R. were doing were "not right." Weesner claimed that he was at the Butchers' 307 Dayton residence when he heard the above conversations take place, and that Randy had said them to Robert.

The summary judgment which was rendered by the trial court on March 14, 1994, reads as follows:

The Court after examining the pleadings and the summary judgment evidence and arguments of counsel, determines that DEFENDANT RANDY J. BUTCHER is entitled to summary judgment as follows:

It is therefore ORDERED, ADJUDGED and DECREED that Defendant's motion for summary judgment as to the duty of Defendant and as to Plaintiff's claim of negligence per se as plead pursuant to Texas Family Code Chapter 34(b) and the same is hereby granted, that Defendant owed no duty to Plaintiff as Defendant is a non-possessor of the property, that Patricia Ann Scott as next friend of J.L.R. take nothing against Defendant Randy J. Butcher, and that Defendant recover all costs incurred in this action from Plaintiff Patricia Ann Scott as next friend for J.L.R.

In her sole point of error, Scott contends the trial court erred in granting summary judgment.

The standard for appellate review of a summary judgment for a defendant is whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of fact as to one or more of the essential elements of the Plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). The movant has the burden to show that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgm't Co.*, 690 S.W.2d 546, 548–59 (Tex.1985). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed material fact issue that precludes summary judgment. *Id.* Every possible inference must be indulged in favor of the non-movant, and any doubts resolved in his favor. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). A summary judgment for the defendant disposing of the entire case, is proper, only if, as a matter of law, plaintiff could not succeed upon any theories plead. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983). Once the defendant produces sufficient evidence to establish the right to a summary judgment, the plaintiff must set forth sufficient evidence to give rise to a fact issue to avoid a summary judgment. *Moore Burger, Inc. v. Phillips Petr. Co.*, 492 S.W.2d 934, 936–37 (Tex.1972).

---

**2.** When the original petition was filed in the trial court, J.L.R.'s mother, Deborah Lewis was her *next friend*. Thereafter, on December 13, 1993, J.L.R.'s grandmother, Patricia Ann Scott was substituted as the *next friend*.

We will first address the issue of whether a violation of the applicable provisions of the FAMILY CODE created a presumption that failure to report suspected child abuse was negligence per se. Chapter 34 provides:

### § 34.01. Persons required to Report.

A person having cause to believe that a child's physical or mental health or welfare has been or may be adversely affected by abuse or neglect by any person shall report in accordance with Section 34.02 of this code.

.    .    .    .    .

### § 34.07. Failure to Report; Penalty.

(a) **A person commits an offense if the person has cause to believe that a child's physical or mental health or welfare has been or may be further adversely affected by abuse or neglect and knowing fails to report in accordance with Section 34.02 of this code.**

(b) An offense under this section is a Class B Misdemeanor.

TEX.FAM.CODE ANN. Ch. 34, §§ 34.01, 34.07(a) and (b) (Vernon 1994).

Negligence per se is a tort concept whereby a legislative imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person. *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 277 (Tex.1979); *Moughon v. Wolf*, 576 S.W.2d 603, 604 (Tex. 1978). In such a case, the jury is not asked whether defendant acted as a reasonably prudent person under the same or similar circumstances. If the violation of the statute is unexcused, the only inquiry is whether the violation was a proximate cause of the accident. *Id.* The fact that the legislature adopts a criminal statute does not mean a court of law must accept it as a standard for conduct in a civil case. *Carter*, 584 S.W.2d at 278. When determining civil matters, a court may accept or reject the criminal statute or use such a part thereof which the court deems appropriate. *Rudes v. Gottschalk*, 159 Tex. 552, 324 S.W.2d 201, 205 (1959); *Fought v. Solce*, 821 S.W.2d 218, 221 (Tex.App.—Houston [1st Dist.] 1991, writ den'd). In the usual negligence per se case, the court is concerned with alleged conduct which would be considered substandard even in the absence of the statute. *Rudes*, 324 S.W.2d at 204.

On occasion, the Supreme Court of Texas has created new concepts of duty based on a violation of criminal statutes even though no duty previously existed. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 315 (Tex. 1987). In *Poole*, the court held that an alcoholic beverage licensee owes a duty to the general public not to serve alcoholic beverages to a person when the licensee knows or should know that the patron is intoxicated. The court reasoned that this conclusion was consistent with the public policy of the Alcoholic Beverage Code, which is for the protection of the safety of the people of the state of Texas. *Id.*

Appellant asks this Court to establish Chapter 34 as establishing a course of conduct for a civil case for a reasonably prudent person. Without citing any authority to construe Chapter 34 in this manner, he argues the purpose of this provision is to protect young children whose age prevents them from protecting themselves by imposing a duty to report upon those who have cause to believe the child's welfare is in jeopardy. No one would argue the laudatory purpose of the statute.

At common law, however, a non-family member had no duty to prevent or report a suspected abuse. The statute at issue does not create a duty to prevent abuse, but rather, only a duty to report, and only after the abuse is suspected. To adopt a violation of the statute as negligence per se would create a problem as to where a court should draw the line concerning the people who would be required to report. Courts would be unable to adopt a uniform standard for determining what evidence is sufficient to establish that a defendant had reason to know when the party denies that he suspected abuse, and would open a floodgate, leading to individuals being suspect to a broad and wide-range of liability based upon uncertain evidence. We feel that if the provisions of the statute requiring reporting of suspected child abuse are to be adopted as creating a duty, the failure of

which would be negligence per se, it should be done by our Supreme Court.

We now turn to answer the question of whether the Appellant has raised a genuine issue of material fact in regard to whether he was a non-possessor of the house and inferentially may have owed a duty to the victim.

Viewed from the perspective and standard that Scott's evidence is taken as true in this Court, we conclude that Randy had a beneficial or equitable interest in the house where the alleged abuse took place. First, we note that Randy's affidavit states he lived there from December 1990 to March 1991. This alone places him there within the time frame set out in the Appellant's live pleadings. The will provided that the trustee was to use the trust property for Randy's maintenance and support. Allowing him to live at that property in which his brother Robert had a one-half interest would be in compliance with the trust. There was the evidence of the home owner's insurance policy in which he was a named beneficiary. Lastly, there was the evidence that he was in fact present in the house, and was at least suspicious of Robert's propensity for abuse of J.L.R.

If it can be shown that, at the minimum, Randy had joint possession of the house with his brother and it can be further shown that he suspected abuse because of Robert's past conduct, and took no action to warn or notify someone, this case could be governed by the reasoning of *Cain v. Cain*, 870 S.W.2d 676 (Tex.App.—Houston [1st Dist.] 1994, writ ref'd.).

In *Cain*, two guardians of the Cain family lived in the same house. Mr. Cain allowed his daughter, her husband, and their son to move in with him. Further Mr. Cain allowed his niece to move into the house. While the niece was living in the house she was raped on numerous occasions by Mr. Cain's son-in-law. At the time of the incident, the son-in-law was on probation for previously assaulting a 17 year old girl at his work place. The niece sued Mr. Cain and his daughter. The case proceeded to trial, and the jury found Mr. Cain 25% negligent and his daughter 75% negligent. Only Mr. Cain appealed the jury's verdict.

The court of appeals affirmed, and recognized that under the general rule, Mr. Cain had no duty to prevent his son-in-law's criminal act. However, the court determined that Mr. Cain's actions fell within the exception since the criminal conduct was the foreseeable result of Mr. Cain's negligence. The court reasoned that when Mr. Cain's niece moved into his home, Mr. Cain knew that the home was inhabited already by an adult male who had been convicted previously of sexual assault of a child. Further, Mr. Cain knew that he was on probation and had violated that probation. In addition, Mr. Cain did not inform his niece's mother of his situation when he agreed to allow her to move into his home. The court concluded that since the case was governed by the exception and not the rule, Mr. Cain had a duty to prevent harm to his niece, because it reasonably should have appeared to him that his son-in-law might victimize his niece. The exception to the rule spoken of in *Cain, ibid,* is succinctly set out in *Nixon v. Mr. Property Mgm't.*

> Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. Usually, the criminal conduct of a third party is a superseding cause relieving the negligent actor from liability. However, the tortfeasor's negligence will not be excused where the criminal conduct is a foreseeable result of such negligence. Texas Courts follow this rule.

The RESTATEMENT (SECOND) OF TORTS § 448 (1965) states:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, ***unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.***

*Id.,* 690 S.W.2d at 549–50 (citations omitted) (emphasis in original).

Applying this reasoning and using the mandated standard for reviewing summary judgments, we conclude that a genuine issue of material fact exists as to Randy's possessory interest in the house, and therefore, whether there was a breach of duty. If the trier of fact concludes that Randy was residing and occupying the above-named house even jointly with Robert Butcher as a result of exercising his rights as beneficial or equitable owner under the sufferance of the trustee, either express or implied, he would owe a duty to any invitee to that house to at least warn of any danger that he knows exists.

In conclusion, we hold that the court did not err in finding as a matter of law that a violation of Chapter 34 of the FAMILY CODE was negligence per se; however, we find Appellant, by her evidence opposing the motion for summary judgment, did raise a genuine issue of material fact as to whether Appellee was in possession of the property at 307 Dayton Street.

The judgment of the trial court is **reversed and this cause is remanded for a new trial in accordance with this opinion.**