Randy J. BUTCHER, Petitioner,

v.

Patricia Ann SCOTT as Next Friend
for J.L.R., Respondent.

No. 95–0170.

Supreme Court of Texas.

Aug. 1, 1995.

Ken W. Good, Tyler, Keith W. Starr, Tyler, for petitioner.

Robert A. Ray, Tyler, for respondent.

PER CURIAM.

This case concerns the liability of a beneficial owner of real property for the criminal acts of a co-owner. We reverse the judgment of the court of appeals, 906 S.W.2d 16.

J.L.R., a minor under the age of ten, was sexually abused by Robert Butcher, the brother of Randy Butcher, at a house that had been bequeathed to the Butchers by their father. Randy Butcher's interest was held in trust by Danny Butcher until Randy reached the age of 25, and Randy was the beneficial owner of an undivided half interest in the house at the time of the abuse.

Patricia Ann Scott, J.L.R.'s grandmother, sued Robert Butcher and obtained a default judgment of $1,000,000. In a separate proceeding, Scott sued Randy Butcher, who lived in the Butcher home from December 1990 to March 1991, part of the time during

which the abuse occurred. The trial court granted summary judgment in favor of Randy Butcher, and the court of appeals reversed.

Scott sued Randy Butcher on two theories. First, she alleged that his failure to report the abuse, as required by Chapter 34 of the Texas Family Code, constituted negligence per se. In addition, Scott alleged that Randy Butcher had a common-law duty to make a reasonable effort to prevent the abuse. The trial court granted summary judgment, holding that (1) Randy Butcher's conduct did not constitute negligence per se, and (2) Randy Butcher owed no duty to J.L.R. because he was not a possessor of the property where the abuse occurred. The court of appeals reversed in part, holding that a fact issue existed as to whether Randy Butcher was in possession of the property.

■ Summary judgment for a defendant is proper if, as a matter of law, the plaintiff cannot prevail on the claims. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983). In reviewing the record, we assume all evidence favorable to the non-movant to be true, and indulge every reasonable inference and resolve any doubt in favor of the non-movant. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■ The existence of a legal duty is a prerequisite to tort liability. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987). Generally, a person has no legal duty to protect another from the criminal acts of a third person. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195 (Tex.1995). There are exceptions to this general rule. A landowner does have a duty to protect invitees from criminal acts of third parties if the landowner knows or has reason to know of an unreasonable risk of harm to the invitee. *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 20 (Tex.1993). This duty is derived from the principle that a party who has the "power of control or expulsion" is in the best position to protect against the harm. *Id.* In the landlord-tenant relationship, we have held that a landlord who retains control over the security and safety of the premises owes a duty to a tenant's employee to use ordinary care to protect the employee against an unreasonable risk of harm from the criminal acts of third parties. *See Centeq Realty*, 899 S.W.2d at 197, and cases cited therein. The right to control the premises is thus one of the factors that determines whether a legal duty should be imposed on the owner or possessor of the premises. *Id.*

■ The court of appeals held that Randy Butcher owed a duty to J.L.R. if he was "in joint possession" of the property. 906 S.W.2d at 22. The court of appeals, however, confuses physical presence with possession. In order to be held liable as an owner or occupier, a party must be in control of the premises. *See Exxon*, 867 S.W.2d at 23. The record is clear that Randy Butcher had no right to control the premises.

When Robert and Randy Butcher's father died, he left the house to both his sons in equal shares. His will provided that:

> In the event I pass from this life before the twenty-fifth (25th) anniversary of the birth of RANDY JOEL BUTCHER, I hereby devise and bequeath his share of my estate as set forth above to my brother, DANNY LYNN BUTCHER, as Trustee for the benefit of my son, RANDY JOEL BUTCHER, subject to the hereinafter described conditions. I will and direct that his share be used for the maintenance, education or support of my son, RANDY JOEL BUTCHER, according to the absolute discretion of the above-named Trustee.

Randy's father died in 1990, when Randy was eighteen years old. The trustee took legal title to Randy's interest in the house, while Robert Butcher inherited the other half interest. The right of legal possession vested in Robert Butcher and the trustee. *See Rauch v. Patterson*, 832 S.W.2d 57, 59 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *Jameson v. Bain*, 693 S.W.2d 676, 680 (Tex.App.—San Antonio 1985, no writ). Randy lived at the house for four months at the sufferance of his older brother and the trustee, but there is no evidence that he ever exercised control over the property.

Apart from Randy Butcher's physical presence in the house, the only other evidence offered to prove control was that Randy's

name was listed on the insurance policy that provided coverage on the house. The fact that Randy's future interest in the property was insured against loss does not constitute evidence that he controlled the premises. *See Smith v. Eagle Star Ins. Co.*, 370 S.W.2d 448, 450 (Tex.1963) ("An insurable interest in property does not necessarily imply a property interest in, or a lien upon, or possession of, the subject matter of the insurance....") (citing 29 AM.JUR. *Insurance* § 438).

The reliance of the court of appeals on *Cain v. Cain*, 870 S.W.2d 676 (Tex.App.— Houston [1st Dist.] 1994, writ denied),[1] is misplaced. In *Cain*, the defendant was held liable for his son-in-law's sexual assault on his teen-aged niece. The defendant had invited his niece to stay in his home, even though he knew his son-in-law, who also lived in the home, was a convicted sex offender. The court of appeals in *Cain* held that the defendant had a duty because he "helped create" a "volatile and dangerous situation." *Id.* at 680. By contrast, Randy Butcher did nothing to create the dangerous situation. He had no power to remove his brother or to exclude J.L.R. According to the affidavit of J.L.R.'s mother, Randy told his brother he should not have children at the house and strongly objected to Robert's behavior toward J.L.R. However, Randy had no control over who stayed in the house.

Because of the procedural posture of this case, we do not reach the question of what duty Randy would have had if he had been in control of the house. However, we note that the duty the court of appeals imposed was to warn or notify someone of suspected abuse. 906 S.W.2d at 19. The affidavit from J.L.R.'s mother states:

> I have heard Defendant [Randy Butcher] call his brother, Robert Butcher, a "child molester". I have heard Defendant tell his brother that he, his brother, should not have children at the house. I have heard Defendant tell his brother that he, his brother, was spending too much time with J.L.R.

To the extent that Randy alerted J.L.R.'s mother to the potential abuse, he would have been entitled to summary judgment even under the duty imposed by the court of appeals.

In a cross-point, Scott challenges the court of appeals' holding that Randy's failure to report child abuse did not constitute negligence per se. Because Scott failed to file a motion for rehearing in the court of appeals, we have no jurisdiction over this cross-point. *Wich v. Fleming*, 652 S.W.2d 353, 356 (Tex. 1983).

Randy Butcher owed no duty to J.L.R. as a matter of law. The trial court's summary judgment was appropriate. Pursuant to TEX. R.APP.P. 170, a majority of this Court, without hearing oral argument, reverses the judgment of the court of appeals and renders judgment in favor of Randy Butcher.

---

1. The court of appeals' opinion erroneously identifies *Cain* as a "writ refused" case.