Leslie PLOWMAN, Appellant,

v.

**GLEN WILLOWS APARTMENTS** and
**Stephen A. Hynes, Individually and d/b/a
Glen Willows Apartments, Appellees.**

No. 13–96–542–CV.

Court of Appeals of Texas,
Corpus Christi.

May 7, 1998.

Opinion Affirming Trial Court on Rehearing
Oct. 1, 1998.

James B. Ragan, Corpus Christi, for Leslie Plowman.

Clay E. Coalson, Meredith, Donnell & Abernethy, Douglas M. Kennedy, Linda C. Breck, Thomas F. Nye, Brin & Brin, P.C., for Appellees in No. 13-96-00542-CV.

William A. Abernethy, Clay E. Coalson, Carlos A. Mattioli, Meredith, Donnell & Abernethy, Linda C. Breck, Thomas F. Nye, Brin & Brin, for Appellees in No. 13-96-00357-CV.

Before DORSEY, YANEZ and RODRIGUEZ, JJ.

## OPINION

DORSEY, Justice.

Leslie Plowman, appellant, filed separate actions against Copperfield Shopping Center and Mutual Life Insurance Company of New York (collectively, Copperfield) and Glen Willows Apartments (Glen Willows) for injury she allegedly sustained resulting from defendants' failure to provide proper lighting and security on their respective properties. The 94th District Court granted appellees' motions for summary judgment on the basis neither Copperfield nor Glen Willows owed a duty to appellant and, as a matter of law,

Glen Willows' omissions were not the proximate cause of appellant's injuries. Though appealed separately, we consider these matters together as they arise from a common factual basis. We affirm the Copperfield judgment and reverse the Glen Willows judgment.

Following an evening out with friends at Booters and The Outback, two night clubs that share a common parking lot in Corpus Christi's Copperfield Shopping Center, Plowman borrowed a friend's car to get home. She found the car, which she knew to be unlocked, where her friend had left it in the Copperfield parking lot, got in, and drove away. Plowman made a single brief stop at a convenience store then drove home to Glen Willows Apartments. She was unaware that, at some point, an intruder had entered the car and was hiding in the back seat. After parking at Glen Willows, but before she could exit the car, the man hiding in the back seat attacked and raped her. He kept her in the car between two and three hours in the Glen Willow's parking lot.

The attack took place beneath a burned out security light—a light Plowman herself had reported as defective some months before. More than a year before the attack, a Glen Willows' security guard had filed a written report noting dark areas such as this posed safety risks to apartment residents.

#### Copperfield

Plowman challenges the trial court's decision to grant Copperfield's motion for summary judgment. She contends Copperfield owed her a duty to provide "appropriate" security and lighting and this duty was breached because the initiation of her assailant's criminal act occurred on Copperfield's property.

■ To prevail on a summary judgment motion, a movant must establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995) (per curiam). A defendant who conclusively negates at least one of the essential elements of each of the plaintiff's causes of action or who conclu-

sively establishes all of the elements of an affirmative defense is entitled to a summary judgment. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). In reviewing a summary judgment, we must accept as true evidence in favor of the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, an appellate court will affirm a summary judgment if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

■ The threshold inquiry in a negligence action is duty. *Centeq Realty v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). A plaintiff must prove the existence and violation of a duty owed to him by the defendant to establish negligence liability. *Siegler*, 899 S.W.2d at 197; *Phillips*, 801 S.W.2d at 525. The existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996); *Siegler*, 899 S.W.2d at 197.

■ As a general rule, a person has no duty to protect another from the criminal acts of a third person or to control the conduct of another. *Harris*, 924 S.W.2d at 377; *El Chico Corp. v. Poole*, 732 S.W.2d 306, 313 (Tex.1987). This general 'no-duty' rule is not absolute. *Butcher v. Scott*, 906 S.W.2d 14, 15 (Tex.1995). A landowner has a duty to protect invitees from criminal acts of third parties if the landowner knows or has reason to know of an unreasonable risk of harm to the invitee. *Scott*, 906 S.W.2d at 15; *Mr. Property Management Co.*, 690 S.W.2d at 550. This duty is derived from the principle that a party who has the "power of control or expulsion" is in the best position to protect against harm. *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex.1993).

■ In determining whether the defendant landowner was under a duty, the court will consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the defendant's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983). Of these factors, foreseeability of the risk is "the foremost and dominant consideration." *El Chico,* 732 S.W.2d at 311.

■ Foreseeability does not require that the alleged tortfeasor anticipate the particular harm; he need only reasonably anticipate the general character of the injury. *El Chico,* 732 S.W.2d at 313. Although criminal acts do occur occasionally and thus may be foreseeable in a broad sense, one who exercises control over premises has no duty to guard against dangers that he cannot reasonably foresee in the light of common or ordinary experience. *Hendricks v. Todora,* 722 S.W.2d 458, 461 (Tex.App.—Dallas 1987, writ ref'd n.r.e.) (op. on reh'g).

■ Before liability will be imposed, there must be sufficient evidence indicating that the defendant knew or should have known that harm would eventually befall a victim. Absent such a showing, a defendant is absolved of liability. *Phillips,* 801 S.W.2d at 525. Such knowledge may be demonstrated by evidence of specific previous crimes on or near the premises. *Mr. Property Management Co.,* 690 S.W.2d at 550.

■ A review of the record at the time the summary judgment was granted on behalf of Copperfield reveals appellant presented no summary judgment evidence to indicate Copperfield knew or should have known of a risk sufficient to justify imposition of a duty for the criminal acts of another. In *El Chico,* the supreme court imposed a duty upon alcoholic beverage licensees to refrain from serving alcohol to a patron when the licensee knew or should have known the patron was intoxicated. *El Chico,* 732 S.W.2d at 314. The Court found the duty arose because the licensee negligently created a foreseeable and dangerous situation for other drivers by serving alcohol to an intoxicated person who would be driving. Given the common knowledge of the effects of alcohol and the direct nature of the defendant's activity, it could be said with certainty that injuries resulting from such activity were foreseeable. *Id.* at 311.

In *Otis Engineering,* an employer who found an employee in an "extreme state of intoxication" suggested that the employee go home, and escorted him to the parking lot. *Otis Eng'g,* 668 S.W.2d at 311. The supreme court imposed a duty upon the employer, not because of the mere knowledge of the intoxication, but because the employer negligently exercised control over the employee. *Phillips,* 801 S.W.2d at 526 (citing *Otis Eng'g,* 668 S.W.2d at 311). The defendant acted affirmatively in sending the drunken employee home and created an unreasonable and foreseeable risk of harm to others. *Phillips,* 801 S.W.2d. at 526.

In *Mr. Property Management Co.,* the owner of an apartment complex hired a management company to operate and manage the property. The owner and the management company failed to comply with a local ordinance requiring them to secure vacant structures and prevent unauthorized entry. Because numerous windows and doors were broken, there was easy access to an empty apartment. A child was abducted and taken to the apartment and sexually assaulted. The supreme court held the owner could be held liable because it failed to comply with a statutory duty. *Mr. Property Management Co.,* 690 S.W.2d at 548. Our sister court in Dallas, however, held *Mr. Property Management Co.* applied only where a duty was statutorily based. *Sewell v. Smith,* 819 S.W.2d 565, 569 (Tex.App.—Dallas 1991) *aff'd,* 858 S.W.2d 350 (Tex.1993).

In *Holt v. Reproductive Serv., Inc.,* 946 S.W.2d 602 (Tex.App.—Corpus Christi 1997, writ denied), we found that, though plaintiffs there failed to allege any specific prior acts of violence at or near the defendant's property, plaintiffs had alleged the defendant received or knew of threats at that location (an abortion clinic) and other clinics owned by the defendant. We held this allegation sufficiently raised the issue of foreseeability of

criminal acts to make imposition of duty to invitees a fact question. *Id.* at 606.

It is undisputed Copperfield had the right to control the Copperfield Shopping Center parking lot. Our analysis, then, turns on whether Copperfield knew or had reason to know of a risk of harm to Plowman by criminals such as her assailant.

A review of the record before the trial court reveals Plowman alleged no facts indicating Copperfield was, or should have been, aware of any risk to its patrons. Plowman alleges no violation of ordinance or statute, no heightened criminal activity in the Copperfield neighborhood, no unusually dangerous activity on Copperfield's part, and no warning or other evidence of knowledge on the part of Copperfield sufficient to impose responsibility for another's criminal acts.

Copperfield presented the trial court with the deposition testimony of Copperfield's property manager, Asa Yeamans, in which Yeamans stated that, as of the time of the incident, he had never been provided any information of crime statistics in the area, and that, aside from three break-in attempts at an appliance store in the shopping center, no other security problems had been reported. Because Plowman produced no summary judgment evidence refuting Copperfield's evidence establishing it owed her no cognizable duty of care, we hold the trial court did not abuse its discretion in granting summary judgment on behalf of Copperfield. Plowman's first point of error is overruled.

### Glen Willows

Plowman's second point of error, like her first, challenges the trial court's granting of a summary judgment, but in this instance the beneficiary of the trial court's decision was Glen Willows Apartments—the owners of the complex where the attack on Plowman took place.

▬▬▬ In the landlord-tenant relationship, a duty to the tenant attaches when the landlord has the right of control over the leased premises. *See Jones v. Houston Aristocrat Apartments, Ltd.,* 572 S.W.2d 1, 2 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). A landlord is not generally liable to a lessee for injuries caused by an unsafe condition, which can include the unreasonable risk of harm from criminal acts of a third party, unless the landlord was aware of the latent dangerous condition. *Tidwell,* 867 S.W.2d at 21; *Daniels v. Shell Oil Co.,* 485 S.W.2d 948, 951 (Tex.Civ.App.—Fort Worth 1972, writ ref'd n.r.e.). When a landlord retains possession or control of a portion of the leased premises, the landlord is charged with the duty of ordinary care in maintaining the portion retained. *Tidwell,* 867 S.W.2d at 21; *Flynn v. Pan Am. Hotel Co.,* 143 Tex. 219, 183 S.W.2d 446, 451 (Tex. 1944). The question of Glen Willows' liability, like Copperfield's, turns on whether Glen Willows knew or should have known of the risk to Plowman.

Unlike the summary judgment proof Plowman offered contesting Copperfield's motion, she included some evidence Glen Willows had reason to know of a danger to its tenants. First, Plowman introduced deposition evidence that, during the month prior to her attack, she had notified Glen Willows that a light which illuminated the area of the parking lot outside her apartment had burned out. Second, there was evidence this same light remained unrepaired until after her attack. She also introduced a number of Courtesy Patrol reports written and filed by Glen Willows' security personnel showing Glen Willows had been warned of the potential danger such burned out lights posed its tenants. One such report, dated June 14, 1991, stated "[unidentified female] was sitting alone in the park[. We] told her it was not safe, but she refused to leave...." Another dated August 28, 1991, states: "Patty: there are about 3 or 4 very dark spots on the property that can be dangerous for someone having to walk through after dark. I can show you these spots and all it would take is a light like the one on the stairway of the clubhouse to give sufficient lighting." Further, Plowman indicated she parked in an area of the parking lot darkened by the burned-out security light and was attacked and held there for over two hours. We find Plowman sufficiently raised the foreseeability of criminal acts on Glen Willows' property.

As summary judgment proof, Glen Willows filed the affidavit of Donna Marchant, the apartment property manager and a Glen Willows employee. Marchant, though not manager during the time of the events in question, swore a search of Glen Willows' records revealed no complaints regarding any rapes on Glen Willows' property through August of 1992, excepting Plowman's. Marchant also denies any written complaints were made regarding the defective light in question prior to the incident. The standard lease form signed by Plowman (a copy of which is attached to the summary judgment motion as an exhibit) requires such complaints be made in writing. This affidavit is insufficient to establish that the criminal act by a third party assailant was not foreseeable. Foreseeability requires a twofold inquiry: whether Glen Willows had knowledge, or should have had knowledge, of conditions which posed a risk to its tenants. *Truong v. Sears Roebuck & Co.*, 945 S.W.2d 178, 180 (Tex. App.—Houston [1st Dist.] 1997, no writ). Merely proving company records contain no prior incidents of rape is insufficient to show Glen Willows did not know or have reason to know of an elevated risk. We find a fact question arises regarding the foreseeability of the risk to Plowman and that Glen Willows did not establish as a matter of law that it owed no duty to Plowman. We hold the trial court abused its discretion in granting summary judgment in favor of Glen Willows and Plowman's second point is sustained.

The summary judgment in favor of Copperfield Shopping Center is AFFIRMED. The summary judgment in favor of Glen Willows Apartments is REVERSED and REMANDED.

## OPINION ON MOTIONS FOR REHEARING

### Glen Willows

■ Glen Willows Apartments has filed a motion for rehearing following our reversal of a summary judgment and remand for further proceedings below. Glen Willows bases its motion on a recent supreme court decision which Glen Willows claims controls the issues presented on Plowman's original appeal and compels a result contrary to that handed down in our prior judgment. We agree, grant Glen Willows' motion for rehearing, and affirm the trial court's summary judgment.

In our original decision, *Plowman v. Glen Willows Apartments, et al.*, 978 S.W.2d 612 (Tex.App.—Corpus Christi 1998, no pet. h.), we concluded a fact question arose regarding the foreseeability of the risk to Plowman and that Glen Willows did not establish as a matter of law that it owed no duty to Plowman. We held the trial court abused its discretion in granting summary judgment in favor of Glen Willows.

Glen Willows brings to our attention the supreme court's decision in *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, (Tex.1998). In *Timberwalk*, the plaintiff was raped in her apartment and sued the owners of the apartment complex alleging negligent failure to provide adequate security. There, as here, the issue was held to be a premises liability question. *Id.* at 753–54 The court noted "foreseeability of an unreasonable risk of criminal conduct is a prerequisite to imposing a duty of care on a person who owns or controls premises to protect others on the property from the risk," *Id.* at 756. Also, the court held that "criminal conduct of a specific nature at a particular location is never foreseeable merely because crime is increasingly random and violent and may possibly occur almost anywhere. . . ." *Id.* at 756. The court went on to say:

A duty exists only when the risk of criminal conduct is so great that it is both unreasonable and foreseeable. Whether such risk was foreseeable must not be determined in hindsight but rather in light of what the premises owner knew or should have known before the criminal act occurred. In determining whether the occurrence of certain criminal conduct on a landowner's property should have been foreseen, courts should consider whether any criminal conduct previously occurred on or near the property, how recently it occurred, how often it occurred, how similar the conduct was to the conduct on the

property, and what publicity was given the occurrences to indicate that the landowner knew or should have known about them. *Id.*

The court elaborated on these factors of proximity, recency, frequency, similarity, and publicity and held they must be considered together in determining whether criminal conduct was foreseeable. The court held *there must be evidence that other crimes occurred on the property or in its vicinity for a landowner to foresee criminal activity. Id.* Further, the complete absence of previous crime or the occurrence of a few crimes over an extended period negates foreseeability. *Id.* The nature of the previous crime is also a significant factor: the previous crime "must be sufficiently similar to the crime in question as to place the landowner on notice of the specific danger." *Id.* at 758. Considering these factors together, the frequency of previous crime necessary to show foreseeability lessens as the similarity of the previous crime to the incident at issues increases. *Id.*

The summary judgment evidence in the present case shows no report of violent personal crime at Glen Willows, in the neighborhood surrounding Glen Willows, or that Glen Willows knew of any violent personal assaults on or around its property. There is no evidence of relevant criminal activity. Applying the *Timberwalk* factors to this case, we conclude that the risk a tenant would be sexually assaulted was not foreseeable to Glen Willows. As a matter of law, Glen Willows owed no duty to provide Plowman additional security to protect her from attacks such as the one she suffered. As Glen Willows moved for summary judgment on the ground it owed no duty to Plowman, summary judgment was properly granted to Glen Willows. We therefore AFFIRM the take nothing judgment favoring Glen Willows.

### Copperfield

█ Plowman also moved for rehearing, challenging our affirmation of the trial court's summary judgment that Copperfield Shopping Center owed no duty to Plowman in *Plowman v. Glen Willows Apartments, et al.,* 978 S.W.2d 612 (Tex.App.—Corpus Christi 1998, no pet. h.). Our original opinion relies on the deposition testimony of Copperfield's property manager Asa Yeamans in which Yeamans stated that, as of the time of the incident, he had never been provided any information of crime statistics in the area, and that, aside from three break-in attempts at an appliance store in the shopping center, no other security problems had been reported. We held that, because Plowman produced no summary judgment evidence refuting Copperfield's evidence establishing it owed her no cognizable duty of care, the trial court did not abuse its discretion in granting summary judgment on behalf of Copperfield.

Plowman urges, in her motion for rehearing, that two affidavits made by Yeamans were submitted at the hearing on the motion for summary judgment; one by Copperfield and one by Plowman. Plowman argues the affidavit upon which we relied was part of her own response to Copperfield's summary judgment motion and, therefore, not available to support Copperfield's summary judgment argument.

The proper scope for a trial court's review of evidence for a summary judgment encompasses all evidence on file at the time of the hearing or filed after the hearing and before judgment with the permission of the court. TEX.R. CIV. P. 166a(c); *Judwin Properties, Inc. v. Griggs & Harrison,* 911 S.W.2d 498, 503 (Tex.App.—Houston [1st Dist.] 1995, no writ); *Gandara v. Novasad,* 752 S.W.2d 740, 743 (Tex.App.—Corpus Christi 1988, no writ).

Plowman also argues Copperfield based its motion on the premise that it owed no duty because the assault occurred off Copperfield's premises, therefore the trial court erred in granting summary judgment (and we in affirming) on any theory other than "no duty."

A review of Copperfield's motion for summary judgment satisfies us that the issue of duty was adequately raised. We acknowledge that Copperfield's primary ground for judgment was that Plowman's injuries were visited upon her off Copperfield's premises; however, we find the motion specific enough

in its challenge to the element of duty to apprize Plowman that she must establish Copperfield owed her a duty.

We GRANT Glen Willow's motion for re-hearing, DENY Plowman's motion for re-hearing, and AFFIRM the judgment of the trial court.