THE SAN BENITO BANK & TRUST COMPANY and Johnson & Davis, L.L.P., Appellants,

v.

LANDAIR TRAVELS, et al., Appellees.

No. 13–96–337–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 24, 2000.

**316**

Edwin R. Fleuriet, Fleuriet, Schell & Phillips, Harlingen, Orrin Johnson, Harlingen, for Appellants.

Hugh P. Touchy, Charles Willette, Jr., Willette, Guerra & Trevino, Brownsville, Leo C. Salzman, Roger W. Hughes, Adams & Graham, Harlingen, for Appellees.

Before Justices DORSEY, YAÑEZ, and RODRIGUEZ.

## O P I N I O N

Opinion by Justice DORSEY.

The issue in this case is whether a crime victim may be held liable in negligence for failing to report and prosecute a crime by a person subsequently victimized by the same criminal. Carlos Cascos, a certified public accountant, hired Debbie Pena to work for him as a bookkeeper. Pena embezzled $78,000.00 from an account belonging to one of Cascos' clients, Landair. Landair discovered the embezzlement and reported it to Cascos. Cascos confronted Debbie Pena, and she admitted to him, in writing, to embezzling the money.

Rather than reporting the embezzlement to the authorities, Mr. Cascos attempted to work out an agreement between Landair and Pena whereby Landair would get its money back and Pena would not go to jail. He hired an attorney, Rene Oliveira, to help. He also paid $30,000.00 of his own money to Landair, and promised to pay the rest. Both Cascos and Oliveira actively tried to keep Landair from reporting Debbie Pena's crimes or pressing criminal charges against her.

Less than a week after her embezzlement from Landair was confirmed, Pena—now unemployed—applied for a job as a bookkeeper at the law firm of Johnson & Davis, L.L.P. Pena, of course, told Johnson & Davis nothing about her recent legal problems. The firm hired Pena, and within a week she forged a check on the law firm's trust account which she converted into a $75,000.00 cashier's check payable to Landair. She made those transactions at San Benito Bank & Trust.

Pena sent the $75,000.00 cashier's check to Mr. Cascos, who turned it over to his lawyer, Oliveira. Neither of them knew that the check had been stolen from Johnson & Davis. Oliveira continued negotiating with Landair, who was inclined to press charges against Pena, to accept the money and forego the criminal prosecution. After around two months of negotiating, Landair "settled" with Pena. The original agreement was that Landair would get the $75,000.00 and Pena would be charged only with a misdemeanor. Apparently, an assistant district attorney refused to prosecute a misdemeanor against Pena over such a large sum, and ultimately, the entire matter blew over and Pena was never charged.

During the time Cascos and Oliveira were negotiating with Landair to avoid Pena's being prosecuted, Pena misappropriated around $20,000.00 more from Johnson & Davis. She was finally arrested for attempting to pass yet another forged law firm check a few months after the final settlement with Landair. The bank paid the law firm for the $75,000.00 check, and is subrogated to the firm for that amount. The bank and the law firm (collectively "Johnson & Davis") have brought the present suit against Cascos and Oliveira for negligently failing to report Pena's embezzlement of the Landair funds.

Their theory is that Cascos' and Oliveira's breach of their duty to report Pena's embezzlement proximately caused

them to lose the money Pena embezzled from them. They argue that a duty to report exists both under statutory and common law. They also complain that Cascos and Oliveira were negligent in failing to warn the firm about Pena. They sued Cascos and Oliveira for negligence, negligence per se, and gross negligence. Defendants specially excepted to plaintiffs' causes of action, claiming that no cause of action will lie under these facts. After allowing the plaintiffs to amend several times, the trial court dismissed their causes of action against Cascos and Oliveira.[1] Appellants, the law firm and the bank, bring this appeal challenging the trial court's dismissal.

### Standard of Review

■■■ Although special exceptions are generally considered to be the means by which an adverse party may force clarification of vague pleadings, they may also be used to determine whether the plaintiff has pled a cause of action permitted by law. *See* TEX.R. CIV. P. 91; *Trevino v. Ortega*, 969 S.W.2d 950–51 (Tex.1998) (special exceptions used to determine no cause of action for spoliation of evidence); *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998); *Holt v. Reproductive Servs., Inc.*, 946 S.W.2d 602, 607 (Tex.App.—Corpus Christi 1997, writ denied). The court must allow an opportunity to amend; however, if a party refuses to amend, or the amended pleading fails to state a cause of action, the case may be dismissed. *Friesenhahn*, 960 S.W.2d at 658. The appellate court reviews such a ruling de novo, taking all allegations, facts, and inferences in the pleadings as true and viewing them in a light most favorable to the pleader. *Perry v. S.N.*, 973 S.W.2d 301, 303 (Tex.1998); *Hall v. Stephenson*, 919 S.W.2d 454, 467 (Tex.App.—Fort Worth 1996, writ denied); *Detenbeck v. Koester*, 886 S.W.2d 477, 479 (Tex.App.—Houston [1st Dist.] 1994, no writ). The question becomes whether,

even assuming plaintiff can prove all the allegations contained in his petition, a cause of action is recognized under Texas law.

### Common–Law Negligence

■■■ We first address plaintiffs' causes of action for negligence. The elements of a negligence cause of action are: (1) a legal duty; (2) breach of that duty; and (3) damages proximately resulting from the breach. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex.1998); *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex.1998). The plaintiff must prove the existence and violation of a duty owed to him by the defendant. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987). A duty is a legally enforceable obligation to conform to a particular standard of conduct. *Valley Shamrock, Inc. v. Vasquez*, 995 S.W.2d 302, 306 (Tex.App.—Corpus Christi 1999, no pet). The existence of a duty is a threshold question of law that courts determine from examining the facts surrounding the occurrence in question. *Accord Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998). If no duty exists, there can be no negligence. *Van Horn*, 970 S.W.2d at 544; *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex. 1993). In this case, Johnson & Davis must show that Cascos and Oliveira owed a duty to take some affirmative action to protect it from Debbie Pena's potential criminal activity.

■■■ The general rule is that a person has no legal duty to protect another from the criminal acts of a third person. *Timberwalk Apartments*, 972 S.W.2d at 756; *Gonzalez v. South Dallas Club*, 951 S.W.2d 72, 76 (Tex.App.—Corpus Christi 1997, no writ). Even if he has the practical ability to exercise such control, a person is generally under no duty to control the conduct of another. *Otis Engineering*

1. Debbie Pena was also a defendant in the original lawsuit, but after the trial court dismissed its causes of action against Cascos and Oliveira, that portion of the suit was severed from the suit against Pena.

*Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex. 1983); RESTATEMENT (SECOND) OF TORTS § 315 (1965). However, the general rule of "no duty" is not absolute. *Butcher v. Scott,* 906 S.W.2d 14, 15 (Tex.1995); *Plowman v. Glen Willows Apartments,* 978 S.W.2d 612, 614 (Tex.App.—Corpus Christi 1998, review denied); *see e.g., Cain v. Cain,* 870 S.W.2d 676, 680–81 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (holding head of household had a duty to prevent the sexual assault of niece by another adult male occupying the house when the sexual assault was the foreseeable result of his negligence); *Gutierrez v. Scripps–Howard,* 823 S.W.2d 696, 699 (Tex.App.—El Paso 1992, writ denied) (holding that publication owed duty to warn of dangers to freelance photographer assigned to hotel owned by man newspaper had previously identified as a drug czar).

One exception is made for cases involving premises liability. One who controls a premises has a duty to use ordinary care to protect invitees from criminal acts of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee. *Timberwalk,* 972 S.W.2d at 756. The duty to provide protection arises from the defendant's power of control or expulsion that his occupation of the premises gives him over the conduct of a third person who may be present. *Plowman,* 978 S.W.2d at 614. The Texas Supreme Court has emphasized that the scope of this duty is commensurate with the landowner's right of control over the property. *Lefmark,* 946 S.W.2d at 54; *Gonzalez,* 951 S.W.2d at 76. Clearly, neither Cascos or Oliveira exercised any "control" over Pena once she left Cascos' employ that would trigger a duty under the rationale of the premises liability line of cases.

Even in premises cases, where a duty is presumed, plaintiffs must offer evidence showing specific previous crimes committed on or near the premises to establish foreseeability sufficient to impose a duty on the landowner. *Mellon Mortg. Co. v. Holder,* 5 S.W.3d 654, 656–58 (Tex.1999); *Timberwalk,* 972 S.W.2d at 756. In determining foreseeability in the premises line of cases, courts consider the factors of proximity, recency, frequency, similarity, and publicity of the previous crimes. *Timberwalk,* 972 S.W.2d at 759. Under *Timberwalk,* foreseeability depends on how often criminal conduct has occurred in the past. *Timberwalk,* 972 S.W.2d at 757–58. While the occurrence of a significant number of crimes within a short time period strengthens the claim that the particular crime at issue was foreseeable, the complete absence of previous crimes, or the occurrence of a few crimes over an extended time period, negates foreseeability. *Id.*

We do not believe that Johnson & Davis has made a showing of foreseeability under *Timberwalk.* Johnson & Davis do not allege that Cascos or Oliveira knew anything more about Pena's criminal history than that she embezzled from Cascos. They do not allege that Cascos or Oliveira made any affirmative misrepresentations to them. They do not claim that they contacted Cascos to check Pena's reference and Cascos misrepresented or failed to disclose anything. They also do not claim that Cascos or Oliveira knew anything about Pena's embezzlement from the law firm. Their bare claim is that in actively lobbying Landair, Cascos' client, to forego reporting and prosecuting Pena, Cascos and Oliveira should have known that Debbie Pena would steal from a future employer.

On the contrary, because a person steals from one employer, it is not foreseeable that she will steal from the next. Debbie Pena was caught embezzling from Cascos, and so far as he and Oliveira knew, she returned the money. It seems as reasonable to believe that Pena would have learned from this mistake—especially while she was still in a precarious legal predicament—as to believe that she would further imperil her freedom by stealing

again from another employer. Thus, even applying the *Timberwalk* factors, Johnson & Davis have not shown that Pena's crimes against them were foreseeable by Cascos or Oliveira.

Another exception to the general rule of no duty is when a special relationship exists between the actor and the third person that imposes a duty upon the actor to control the third person's conduct. *Greater Houston*, 801 S.W.2d at 525; *Otis Engineering*, 668 S.W.2d at 311. These relationships have been found to exist between employer and employee, parent and child, and independent contractor and contractee under special circumstances. *See, e.g., Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 735–36 (Tex.1998) (vacuum cleaner manufacturer owed duty to woman raped by door-to-door salesman); *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 720 (Tex.1995); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990); *but see, e.g., Van Horn v. Chambers*, 970 S.W.2d 542, 546 (Tex.1998) (does not apply to physician-patient relationship); *Villacana v. Campbell*, 929 S.W.2d 69, 75–76 (Tex. App.—Corpus Christi 1996, writ denied) (does not apply to parents of adult son living at home); *Wofford v. Blomquist*, 865 S.W.2d 612, 614–615 (Tex.App.—Corpus Christi 1993, writ denied) (does not apply to grandparents). However, we have discovered no case which holds that a former employer has this relationship with his former employee. Even a *present* employer is not obligated to control the off-duty tortious conduct of its employees. *See* RESTATEMENT (SECOND) OF TORTS § 317, comment b. Again, control is the critical factor. We certainly do not believe that the "perpetrator-crime victim" relationship is the type of relationship that would trigger a duty for the victim to control the perpetrator's future conduct.

Another doctrine has been recognized by Texas courts that guides us in deciding this case. If a party creates a dangerous situation, a duty is imposed upon him to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured by the dangerous situation he created. *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex.1995); *Buchanan v. Rose*, 138 Tex. 390, 159 S.W.2d 109, 110 (1942). This analysis focuses on the actor's *creation* of the dangerous condition.

In *Buchanan v. Rose*, a truck driver drove his truck over a bridge causing the bridge to collapse, though the driver of the truck was not negligent. Another driver stopped the truck driver, told him the bridge had collapsed and that he ought to put some warning signs up. *Id.* The truck driver said he did not have time to place any warning signs, and indeed, did not place any warnings. *Id.* Six days later, the Buchanans ran onto the broken bridge and, without any negligence on their part, Mrs. Buchanan was severely injured. *Id.* A jury found that the truck driver was negligent, and the trial court rendered judgment for the plaintiffs. *Id.*

The court stated:

It is a well-understood rule that negligence is the doing of that which an ordinarily prudent person would not have done under the same or similar circumstances, or the failure to do that which an ordinarily prudent person would have done under the same or similar circumstances. Here we are not concerned with any supposed negligence on the part of the defendant in doing something which he should not have done, for it is conceded that he was not negligent in breaking the bridge down. If the driver of the truck was negligent at all, it was because of his failure to do something-to give warning of the broken bridge. Before we can determine whether he was negligent in failing to give warning, we must first decide whether he owed the legal duty to do so.

There are many instances in which it may be said, as a matter of law, that there is a duty to do something, and in others it may be said, as a matter of law, that there is no such duty. Using familiar illustrations, it may be said generally, on the one hand, that if a party negligently creates a dangerous situation it then becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby. On the other hand, it may be said generally, as a matter of law, that a mere bystander who did not create the dangerous situation is not required to become the good Samaritan and prevent injury to others. Under the last rule, a bystander may watch a blind man or a child walk over a precipice, and yet he is not required to give warning. He may stand on the bank of a stream and see a man drowning, and although he holds in his hand a rope that could be used to rescue the man, yet he is not required to give assistance. He may owe a moral duty to warn the blind man or to assist the drowning man, but being a mere bystander, and in nowise responsible for the dangerous situation, he owes no legal duty to render assistance.

We think it may also be said that if one by his own acts, although without negligence on his part, creates a dangerous situation in or along a public way and it reasonably appears that another in the lawful use of such way in the exercise of ordinary care for his own safety may be injured by the dangerous situation so created, the one creating the same must give warning of the danger or be responsible for the consequences. To illustrate: One who in the exercise of a lawful right, and without negligence on his part, makes an excavation across a street or sidewalk or on his premises in close proximity to a public way, or parks a vehicle in a road, or otherwise obstructs the road with a foreign substance, is bound to give warning of the danger created thereby.

Likewise, it has been held that one who, without negligence, strikes a trolley pole with his automobile and causes it to fall across the road is liable for failure to protect others from injury thereby.

It will be noted, however, that in each of the above instances the defendant by his own act created the dangerous situation. In the case at bar, it is hardly fair to say that the defendant's agent created the dangerous situation. The bridge was already in a defective condition. It was insufficient in strength to carry a normal load. It merely gave way as the result of the usual and legitimate use of the road. It fell as a result of its own inherent defects. Defendant was merely the victim of a defective condition that already existed. It would be carrying the matter too far to say that one must give notice of every known defect in a road naturally resulting from his normal and legitimate use thereof. To so hold would make the use of the highways too hazardous from the standpoint of public liability.

*Id.* at 110–11. Ultimately, the court held that because the driver did not create the dangerous condition, he had no duty to warn the public of it. *Id.*

 We find the reasoning in *Buchanan* applies equally in the case at bar, and perhaps, best explains why Cascos and Oliveira owed no duty to Johnson & Davis. In this case, like *Buchanan*, we find that defendants were merely "the victims of a defective condition that already existed." No negligence on the part of Cascos *caused* Pena to embezzle from him. While plaintiffs have thrown about allegations that Cascos was negligent in supervising Pena, we are unconvinced that any amount of negligence on his part could have *caused* her to steal from him were she not already so inclined.

■ The question next becomes, does Cascos owe any duty to the general public to protect it from Pena's potential criminal conduct or to warn it about Pena. We believe the answer to this question is no. *See also Perry,* 973 S.W.2d at 308–09 (refusing to find a common law duty to report child abuse). Whether or not it was foreseeable that failing to report Pena's crime would result in her stealing again, Cascos had no duty to the public—under tort law—to do anything to protect against Pena's future conduct. Certainly, it was less foreseeable that Pena would steal from another employer than that someone would be injured crossing the broken bridge in *Buchanan.* Moreover, the truck driver in *Buchanan* "caused" the breaking of the bridge much more than Cascos can be said to have "caused" Pena's criminal conduct. The experience of becoming a crime victim cannot carry with it a duty to protect against the future tortious conduct of the criminal. Cascos is more like a bystander, who though he may be morally obligated to warn about Pena's criminal propensities, is not liable in tort for any failure to warn or control Pena's future conduct by reporting her crime to the authorities. *See id.; Ford Motor Co. v. Dallas Power & Light Co.,* 499 F.2d 400, 412 n. 20 (5th Cir.1974).

■ Having determined that this case does not fall under a recognized exception to the general rule of no duty, we look to the factors considered in determining whether a new common law duty should be created, *i.e.,* (1) social, economic, and political questions and their application to the facts at hand; (2) the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant; and (3) whether one party would generally have superior knowledge of the risk or a right to control the actor who caused the harm. *Praesel,* 967 S.W.2d at 397–98 (citing to factors from *Graff,* 858 S.W.2d at 920, *Greater Houston,* 801 S.W.2d at 525, and *Otis Engineering,* 668 S.W.2d at 309). Applying the facts of this case to these factors, we find that Cascos and Oliveira owed no legal duty to Johnson & Davis. Creation of this duty could have obvious far-reaching and undesirable consequences. A private citizen should be free to handle the experience of being victimized by a criminal without incurring tort liability to any future victims of that criminal. To hold a private citizen liable for the actions of a criminal who victimized him or her in the past would make the citizen twice a victim. The criminal alone is responsible for his conduct, and we find no social utility whatever of imposing any duty upon a victim to ensure the safety of potential future victims. We overrule appellants' first points of error.

### Negligence Per Se

Appellants' second cause of action is for negligence per se. Appellants point to several federal and state statutes relating to reporting of crime, tampering with witnesses, and hindering prosecution to find a statutory duty they contend forms the basis of a negligence per se cause of action.[2] We disagree. The Texas Supreme Court recently addressed a similar issue in *Perry v. S.N.,* 973 S.W.2d 301 (Tex.1998). In *Perry,* a group of parents brought a negligence per se action against the friends of day care providers for failing to report child abuse that they allegedly witnessed at the day-care center. *Id.* They based this action on the defendants' violation of a family code statute which requires reporting of suspected child abuse. *Id.* at 302–

**2.** Appellants contend that appellees' breached the following statutes: (1) 18 U.S.C. § 4 (making it a crime to have knowledge of the actual commission of a felony and to conceal that or fail to report it); (2) 18 U.S.C. § 3 (making it a crime to assist a person known to have committed a crime in order to hinder or prevent his apprehension, trial or punishment); (3) TEX. PEN.CODE ANN. § 36.05 (tampering with a witness); (4) TEX. PEN.CODE ANN. § 38.05 (providing aid to avoid arrest).

304. The court held that violation of the child abuse reporting statute was not negligence per se.

"The threshold questions in every negligence per se case are whether the plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff's injury is of a type that the statute was designed to prevent." *Id.* at 305. However, the *Perry* court noted that even when the plaintiffs have met those requirements, the court must still determine whether the statute is an appropriate basis for tort liability. *Id.* at 305. The court pointed out that the duty to obey the criminal law is not equivalent to a duty in tort, and that any statutory violation is not automatically negligence per se. *Id.* at 304, 304 n. 4. Rather, the court stated that "the mere fact that the Legislature adopts a criminal statute does not mean that this court must accept it as a standard for civil liability." *Id.* at 304 (citing *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex.1979)).

The *Perry* court set forth the following factors to guide a court in determining whether imposing tort liability for violation of a particular criminal statute is "fair, workable, and wise":

(1) whether the statute is the sole source of any tort duty from the defendant to the plaintiff or merely supplies a standard of conduct for an existing common law duty;

(2) whether the statute puts the public on notice by clearly defining the required conduct;

(3) whether the statute would impose liability without fault;

(4) whether negligence per se would result in ruinous damages disproportionate to the seriousness of the statutory violation, particularly if the liability would fall on a broad and wide range of collateral wrongdoers; and

(5) whether the plaintiff's injury is a direct or indirect result of the violation of the statute.

*Id.* at 306–09. The ultimate lesson from *Perry* is that courts should not apply the doctrine of negligence per se if the criminal statute does not provide an appropriate basis for civil liability.

Considering the balance of the facts of this case as applied to these factors, we find that the statutes upon which plaintiffs seek to rely are inappropriate bases for negligence per se liability. As we have discussed at length, no duty to report a crime exists at common law. Therefore, adopting the statutory duty would create a new class of tort cases rather than defining more precisely what conduct breaches that duty. *Id.* at 306. The penal statutes relied upon by the appellants are aimed at protecting the State's interest in apprehending felons. Even assuming that protection of the general public is the ultimate goal of these statutes, and thus, appellants fall within the class sought to be protected, these statutes do not make it entirely clear that a crime *victim* is unable to seek private restitution rather than public prosecution from an embezzler. "Assisting a criminal from being apprehended" by failing to report a crime has entirely different ramifications if done by the crime victim himself. Application of this doctrine would effectively force every crime victim to report and prosecute the criminal or risk being liable to a third party injured by that criminal in a similar manner. In many instances, it may eliminate a theft victim's ability to recover his property because the perpetrator no longer has much to lose when he is behind bars, nor does he have any way of earning the money to make restitution with. We agree that these concerns are best left to the criminal justice system rather than in the hands of private individuals and do not find imposition of tort liability appropriate under these circumstances.

The statutes upon which plaintiffs rely do not form the basis of a duty for negligence per se liability. For many of the same reasons that we refuse to impose such a common law duty, we find that

imposing liability based on a statutory duty in this situation is inappropriate. Accordingly, appellant Johnson & Davis, L.L.P.'s points two, three and four, and San Benito Bank & Trust's second point are overruled.

Because gross negligence must be predicated upon a finding of negligence or negligence per se, we hold the trial court properly granted special exceptions as to plaintiffs' gross negligence cause of action. We overrule San Benito Bank & Trust's third point of error.

### *Failure to Warn of Pena's Known Criminal History*

In their final point of error, Johnson & Davis complains that Cascos and Oliveira breached a duty to warn it, as Pena's subsequent employer, of Pena's criminal history. They hinge this claim largely on the fact that appellees "used their facilities and phone lines" to communicate with Pena to resolve the prior embezzlement. We find that the duty plaintiffs seek to impose in this cause of action is the same as a duty under common law negligence for failure to report the crime. In order to make out their failure to warn cause of action, appellants must establish that appellees owed it a duty to take some affirmative act to protect it from the potential criminal conduct of Debbie Pena. For the same reasons as set forth previously at length, we find Cascos and Oliveira had no duty to Johnson & Davis.

We overrule Johnson & Davis, L.L.P.'s fifth point of error, and affirm the judgment of the trial court in all respects.

Justice LINDA REYNA YAÑEZ not participating.