**Opinion issued August 30, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00234-CR

———————————

**CURTIS VILLAREAL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1465621**

---

## MEMORANDUM OPINION

A jury found appellant, Curtis Villareal, guilty of the offense of aggravated robbery.[1] After he pleaded true to the allegations in two enhancement paragraphs

---

[1]    *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2011).

that he had twice been previously convicted of felony offenses, the jury assessed his punishment at confinement for thirty-five years. In three issues, appellant contends that his trial counsel provided him with ineffective assistance during both the guilt and punishment phases of trial and the trial court erred in admitting certain evidence during the punishment phase of trial.

We modify the trial court's judgment and affirm as modified.

### Background

The complainant, Yazan Barhoum, a taxi cab driver, testified that on the night of April 10, 2015, he picked up three passengers, two males and a female, in his cab from a restaurant. Although it was nighttime, the light from a streetlight at the restaurant allowed the complainant to see all three passengers before they entered his cab. Appellant sat next to the complainant in the front passenger seat of the cab, while the other male passenger and the female passenger sat in the backseat. The complainant "had an opportunity to observe [appellant]" during the approximately fifteen-minute drive to the passengers' destination. Upon arrival, appellant, who was still seated next to the complainant in the cab, opened the front-passenger-side door of the cab and "act[ed] like he want[ed] to pay" the complainant and "like he[] [was] looking for his wallet." Appellant then pushed the complainant and grabbed his cellular telephone and wallet. Although the complainant "tr[ied] to get [his] stuff back" and caught appellant by the back of the cab, the other male passenger, who

2

had also exited the cab, grabbed the complainant from behind and said, "We will shoot you." As the other male passenger held him, the complainant looked straight at appellant and saw that he was holding a black firearm in his hand. Appellant said, "I will shoot you" and pointed the firearm at the complainant's head, "even click[ing] it."

The complainant then proceeded to "back up" and enter his cab, while appellant and the other passengers ran away to the "corner house." The complainant watched to see where appellant and the other two passengers went, borrowed a cellular telephone from a person nearby, and called for emergency assistance. The complainant noted that when he initially called for emergency assistance, he identified one of the male passengers as "Spanish [with] . . . tattoos all on his face" and mistakenly stated that the other male passenger was black because he was stressed, under pressure, and scared. The complainant explained that neither of the male passengers in his cab that night was black, rather both were "Spanish with tattoos on [their] face and neck." And the "initial description" that he gave to emergency-assistance personnel about the male passenger who had robbed him was that he was "a Latin person with face tattoos." After law enforcement officers arrived at the scene, they detained the other male passenger, but appellant had "run[] away."

Following the aggravated robbery, a law enforcement officer contacted the complainant about viewing a photographic array. On April 14, 2015, the complainant met with the officer, who showed him "some pictures," and he signed a "Witness Admonishment" form.[2] The officer also told the complainant that "if [he] recognize[d] the guy," then he should circle that individual's photograph.

According to the complainant, he recognized, in the photographic array, appellant, as the person who had robbed him and "almost kill[ed] him," "[r]ight away" based on "his face." Identifying appellant in court, the complainant explained that appellant was the person who he had identified in the photographic array, who had sat next to him in the front passenger seat of his cab, and who had pointed a firearm at him. None of the other individuals who the complainant had viewed in the photographic array was the person who had robbed him. He also stated, "I know that's the guy," indicating appellant.

The complainant further testified that he did not give anyone permission to take his cellular telephone or wallet on April 10, 2015, he felt "bad" and afraid when appellant pointed the firearm at his head, and he felt threatened with serious bodily injury or death. And appellant was the only person who the complainant saw with a firearm that night.

---

[2] The trial court admitted into evidence the photographic array and the "Witness Admonishment" form signed by the complainant.

4

## Admission of Evidence

In his second issue, appellant argues that the trial court erred in admitting, during the punishment phase of trial, the testimony of Harris County Sheriff's Office Deputy W. Roush about his "alleged gang affiliation" because the evidence, in violation of his right against self-incrimination and right to counsel, was obtained "as a result of an unwarned and uncounseled interview" and he was harmed by its admission. *See* U.S. CONST. amends. V, VI; *see also Estelle v. Smith*, 451 U.S. 454, 101 S. Ct. 1866 (1981) (relied on by appellant). In a portion of his third issue, appellant further argues that the trial court reversibly erred in admitting such evidence because it was not admissible as reputation or character evidence. In response, the State asserts that appellant has not preserved his complaints for appellate review.

We review a trial court's decision to admit evidence for an abuse of discretion. *See Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When considering a trial court's decision to admit evidence, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996) (internal quotations omitted). We will uphold a trial court's evidentiary ruling if it is correct

on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

***Fifth and Sixth Amendments***

The plain language of the Fifth Amendment to the United States Constitution protects a defendant from compelled self-incrimination. *Salinas v. State*, 369 S.W.3d 176, 179 (Tex. Crim. App. 2012), *aff'd*, 570 U.S. 178, 133 S. Ct. 2174 (2013); *Buentello v. State*, 512 S.W.3d 508, 521 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd); *see* U.S. CONST. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."). It prohibits the use of statements made by a criminal defendant against himself if they are obtained through custodial interrogation without the necessary procedural safeguards to secure the Fifth Amendment right against self-incrimination. *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966); *Jones v. State*, 119 S.W.3d 766, 772 (Tex. Crim. App. 2003); *see also Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007) ("The Fifth Amendment of the United States Constitution commands that no person 'shall be compelled in any criminal case to be a witness against himself[.]" (alteration in original)).

The Sixth Amendment guarantees a criminal defendant the right to have counsel present at all "critical" stages of his prosecution. *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S. Ct. 2079, 2085 (2009); *Carnell v. State*, 535 S.W.3d 569, 571

(Tex. App.—Houston [1st Dist.] 2017, no pet.); *see* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.").

At the punishment phase of trial, Deputy Roush, a gang investigator, testified that he interviews and documents gang members and the information he obtains from them is entered into a database which tracks gang activity, gang location, and the identities of known-gang members. According to Roush, there are over 250 known gangs in Harris County, Texas, and they pose a "[b]ig threat" to the community. Gang membership can be determined when a gang member "self-admit[s]" or through "tattoos that are gang specific." And gangs often have their own marks, symbols, and colors. Roush noted that "people who are affiliated with . . . gangs" do not "necessarily just stop [gang-related activities] as soon as they're recognized [as] . . . gang member[s]" or because of a "law enforcement presence."

In regard to appellant, Deputy Roush testified that he interviewed him on January 26, 2017, and appellant "self-admit[ted]" that he was a member of the "Houstone" gang. Appellant appeared proud of his membership, and Roush noted that he had numerous gang-related tattoos. According to Roush, the Houstone gang originated in the prison system, consisting of "[a] group of inmates that [would] band together in prison to protect each other." And it then evolved into "a predator-type organization committing every type of crime [an individual] c[ould] think of." The

7

Houstone gang is large, and its members engage in criminal offenses such as robbery, murder, extortion, and fraud. During Roush's testimony, the trial court admitted into evidence sixteen photographs of appellant's tattoos, and Roush described the tattoos and their gang-related significance and meaning.

Appellant argues that Deputy Roush's testimony violated his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel because Roush obtained the evidence about appellant's purported gang affiliation during an interview that he conducted with appellant "in the Harris County Jail during the pendency of the instant case." At the time, "[a]lthough appellant was represented by counsel, . . . Roush did not inform [his trial] counsel that he intended[,] or did, in fact, interview appellant, and [Roush] 'did not read [appellant] his rights'" before conducting the interview. (Fourth alternation in original.) Further, appellant asserts that the "interview proved to be a 'critical stage' of the aggregate proceedings" against him, his trial counsel "was not notified in advance that the interview would encompass the issue of his client's lack of rehabilitation or 'continuing risk to the community,'" and he was "denied the assistance of his counsel in making the significant decision of whether to submit to the interview and to what end . . . [Roush's] testimony could be employed."

To preserve a complaint for appellate review, a defendant must show that he made his complaint to the trial court by a timely and specific request, objection, or

motion, and the trial court either ruled on his request, objection, or motion, or refused to rule, and he objected to that refusal. TEX. R. APP. P. 33.1(a); *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007); *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). The rationale of rule 33.1 is that if an objection is raised before the trial court as soon as error becomes foreseeable, the error may be addressed and possibly corrected or avoided. *Moore v. State*, 295 S.W.3d 329, 333 (Tex. Crim. App. 2009). Almost all error, even constitutional error, must be preserved by objection or it is waived. *See Hull v. State*, 67 S.W.3d 215, 216–18 (Tex. Crim. App. 2002); *Holland v. State*, 802 S.W.2d 696, 700 (Tex. Crim. App. 1991); *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).

Notably, "[t]he purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial [court] of the basis of the objection and give [it] the opportunity to rule . . . ; [and] (2) to give opposing counsel the opportunity to respond to the complaint." *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). To preserve error, "a party must be specific enough so as to 'let the trial [court] know what he wants, why he thinks himself entitled to it, and do so clearly enough for the [trial court] to understand him at a time when the trial court is in a proper position to do something about it.'" *Id.* at 312–13 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

9

A party also fails to preserve error when the contention urged on appeal does not comport with the specific complaint made in the trial court. *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). In other words, an objection stating one legal basis may not be used to support a different legal theory on appeal. *See Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004).

Prior to Deputy Roush's testimony, appellant objected to its admission on the grounds that "its probative value [was] . . . outweighed by its prejudicial impact";[3] "there [was] no evidence . . . linking th[e] particular crime [committed by appellant in the instant case] with gang activity," making it "totally extraneous"; and it "violat[ed] . . . the attorney/client privilege." Such objections do not comport with the Fifth and Sixth Amendment complaints that appellant now attempts to advance on appeal. *See Pena*, 285 S.W.3d at 464 (complaint on appeal must comport with complaint made at trial); *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) ("The issue . . . [is] whether the complaining party on appeal brought to the trial court's attention the very complaint that party is now making on appeal." (internal quotations omitted)); *see also Alfaro v. State*, 224 S.W.3d 426, 434 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (concluding trial court "never had the

---

[3]     *See* TEX. R. EVID. 403.

10

opportunity to rule upon th[e] rationale that [defendant] now presents on appeal" (internal quotations omitted)).

Accordingly, we hold that appellant has not preserved his complaint that the trial court erred in admitting the testimony of Deputy Roush about his "alleged gang affiliation" on the grounds that the evidence was obtained in violation of his right against self-incrimination and right to counsel. *See Johnson v. State*, 357 S.W.3d 653, 658 n.3 (Tex. Crim. App. 2012) ("The Fifth Amendment privilege against self-incrimination . . . is a forfeitable privilege."); *Lucio v. State*, 351 S.W.3d 878, 909 (Tex. Crim. App. 2011) (defendant did not preserve complaint admission of evidence violated Sixth Amendment right to counsel); *Buentello v. State*, 512 S.W.3d 508, 521 n.5 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (defendant did not preserve Fifth Amendment complaint for appeal); *see also Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) (holding constitutional and statutory rights may be forfeited where defendant does not object); *Longoria v. State*, No. 01-15-00213-CR, 2016 WL 6755772, at *3 (Tex. App.—Houston [1st Dist.] Nov. 15, 2016, no pet.) (mem. op., not designated for publication) (defendant did not preserve complaint trial court denied him Sixth Amendment right to counsel).

***Beasley v. State***

Appellant further argues that the trial court erred in admitting Deputy Roush's testimony about his "alleged gang affiliation" because it was not admissible as

reputation or character evidence where "the four-part test established by the Texas Court of Criminal Appeals in *Beasley* [*v. State*, 902 S.W.2d 452 (Tex. Crim. App. 1995), was not] met."

In general, evidence of a defendant's gang membership is relevant and admissible during the punishment phase of a trial because the evidence relates to the defendant's character. *Beasley*, 902 S.W.2d at 456; *Garcia v. State*, 239 S.W.3d 862, 866–67 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Evidence of gang membership allows the jury to make an informed decision regarding the character of the defendant when determining the appropriate punishment to assess. *See Beasley*, 902 S.W.2d at 456–57; *Anderson v. State*, 901 S.W.2d 946, 950 (Tex. Crim. App. 1995). To prove relevance of a defendant's membership in an organization or a group, the State must show: (1) proof of the group's violent and illegal activities and (2) the defendant's membership in the group. *Mason v. State*, 905 S.W.2d 570, 577 (Tex. Crim. App. 1995). This is because,

> [i]t is essential for the jury to know the types of activities the gang generally engages in so that [it] can determine if [a defendant's] gang membership is a positive or negative aspect of his character, and subsequently his character as a whole. Only after the jury has been provided with this information can there be a fair evaluation of how gang membership reflects on the gang member's character.

*Beasley*, 902 S.W.2d at 456; *see also Anderson*, 901 S.W.2d at 950 ("Although relevant, gang membership alone would be meaningless to a jury which has no knowledge of the gang's purpose or activities."). It is not necessary to link the

12

defendant to the bad acts or misconduct generally engaged in by the gang members, so long as the jury is (1) provided with evidence of the defendant's gang membership, (2) provided with evidence of the character and reputation of the gang, (3) not required to determine if the defendant committed the bad acts or misconduct, and (4) only asked to consider the reputation or character of the defendant. *Beasley*, 902 S.W.2d at 457; *Garcia*, 239 S.W.3d at 867; *Aguilar v. State*, 29 S.W.3d 268, 270 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

Appellant argues that the trial court erred in admitting evidence of his "alleged gang affiliation" because the fourth prong of *Beasley* was not met. Specifically, appellant asserts that "there was . . . no testimony whatsoever about his actual character or reputation . . . since Deputy Roush was completely unfamiliar with him"; Roush "never explained to the jury how . . . [his] self-admission of gang membership and tattoos affected [his] character"; "[i]t is difficult to discern how any of [Roush's] testimony should be considered in relation to [his] 'character and reputation'"; and the trial court did not limit the jury's consideration of the evidence of gang membership for the purposes of assessing his reputation and character.

However, appellant objected to the admission of Deputy Roush's testimony on the grounds that "its probative value [was] . . . outweighed by its prejudicial impact";[4] "there [was] no evidence . . . linking th[e] particular crime [committed by

---

[4]    *See id.*

13

appellant in the instant case] with gang activity," making it "totally extraneous"; and it "violat[ed] . . . the attorney/client privilege." Such objections do not comport with the complaint that appellant now attempts to advance on appeal, i.e., that the trial court erred in admitting Roush's testimony because the fourth prong of *Beasley* was not met. *See Pena*, 285 S.W.3d at 464; *Reyna*, 168 S.W.3d at 177; *see also Alfaro*, 224 S.W.3d at 434.

Accordingly, we hold that appellant has not preserved his complaint that the trial court erred in admitting the testimony of Deputy Roush about his "alleged gang affiliation" on the grounds that it did not meet the four-part test established in *Beasley*.[5] *See Orellana v. State*, 489 S.W.3d 537, 546–47 (Tex. App—Houston [14th Dist.] 2016, pet. ref'd) (defendant's Texas Rule of Evidence 403 objection did

---

[5] To the extent that this portion of appellant's third issue can be read as a jury-charge-error complaint, i.e., a complaint that the trial court erred in not instructing the jury, during the punishment phase of trial, that it could consider the "alleged gang affiliation" evidence only in the context of appellant's character and reputation, we note that he did not object to the trial court's charge and he does not argue on appeal that the trial court's error was so egregious and created such harm that he did not receive a fair and impartial trial. *See* TEX. R. APP. P. 38.1(i); *Wyatt v. State*, 23 S.W.3d 18, 23 n.5 (Tex. Crim. App. 2000) ("We will not make [defendant]'s arguments for him . . . ."); *Torres v. State*, 979 S.W.2d 668, 674 (Tex. App.—San Antonio 1998, no pet.) (defendant's jury-charge complaint waived due to inadequate briefing where he failed to discuss harm); *see also Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013) (complaints of jury-charge error reviewed under two-step process, considering first whether error exists and second whether error caused sufficient harm to require reversal); *Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009) (where defendant did not object at trial, appellate court will reverse only if error so egregious and created such harm defendant did not receive fair and impartial trial).

not preserve complaint gang-related evidence not relevant); *Burcham v. State*, No. 02-10-00150-CR, 2011 WL 3211232, at *2–3 (Tex. App.—Fort Worth July 28, 2011, pet. ref'd) (mem. op., not designated for publication) (defendant did not preserve complaint "trial court violated the fourth *Beasley* factor" where he did not raise issue in trial court).

## Ineffective Assistance

In his first issue, appellant argues that his trial counsel did not provide him with effective assistance during the guilt phase of trial because counsel did not "challenge the out-of-court and in-court identifications of appellant." In a portion of his third issue, appellant argues that his trial counsel did not provide him with effective assistance during the punishment phase of trial because counsel did not "request [an] instruction[] limiting the jury's consideration of inflammatory and prejudicial evidence," namely, "an instruction that the jury could consider evidence of extraneous bad acts only if proven beyond a reasonable doubt." *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2017).

The Sixth Amendment to the United States Constitution guarantees the right to the reasonably effective assistance of counsel in criminal prosecutions. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *see* U.S. CONST. amend. VI. To prove a claim of ineffective assistance of counsel, appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and

15

(2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006).

Appellant has the burden to establish both prongs of *Strickland* by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see also Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. We apply the same two-prong *Strickland* standard of review to claims of ineffective assistance of counsel during both the guilt and punishment phases of trial. *Hernandez v. State*, 988 S.W.2d 770, 772–74 (Tex. Crim. App. 1999).

Generally, a silent record that provides no explanation for trial counsel's actions will not overcome the strong presumption of reasonable assistance.

16

*Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). In the rare case in which trial counsel's ineffectiveness is apparent from the record, an appellate court may address and dispose of the claim on direct appeal. *Lopez*, 343 S.W.3d at 143. However, the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law and no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of counsel's subjective reasoning. *Id.*

### *Pre-Trial and In-Court Identifications*

Appellant first argues that his trial counsel did not provide him with effective assistance during the guilt phase of trial because counsel did not file a motion to suppress the complainant's pre-trial identification of him or object to the complainant's in-court identification of him. He further asserts that his trial counsel's failure to do so prejudiced him.

A trial counsel's decision not to file a motion to suppress does not constitute per se ineffective assistance. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984); *Wert v. State*, 383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.). This is because counsel is not required to perform any useless or futile act. *See Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005); *Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991). To satisfy *Strickland* and prevail on a claim for ineffective assistance of counsel premised on a failure to

file a motion to suppress, a defendant "must show by a preponderance of the evidence that the motion to suppress would have been granted and the remaining evidence would have been insufficient to support his conviction." *Wert*, 383 S.W.3d at 753 (citing *Jackson*, 973 S.W.2d at 956–57). Likewise, to succeed on an ineffective assistance claim based on not objecting to evidence, appellant must demonstrate that if his counsel had objected, the trial court would have erred in overruling the objection. *Oliva v. State*, 942 S.W.2d 727, 732 (Tex. App.—Houston [14th Dist.] 1997, pet. dism'd). A trial counsel's decision not to object to admissible evidence does not constitute ineffective assistance. *Id.*

Here, appellant's ineffective-assistance-of-counsel arguments focus on the pre-trial identification procedures utilized in the instant case. A pre-trial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial denies the accused due process of law. *Conner v. State*, 67 S.W.3d 192, 200 (Tex. Crim. App. 2001); *Barley v. State*, 906 S.W.2d 27, 32–33 (Tex. Crim. App. 1995); *Mendoza v. State*, 443 S.W.3d 360, 363 (Tex. App.—Houston [14th Dist.] 2014, no pet.). When reviewing a defendant's challenge to the admissibility of a pre-trial identification procedure, we employ a two-step analysis: (1) whether the pre-trial identification procedure was impermissibly suggestive and (2) whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *Barley*, 906 S.W.2d

18

at 33; *see also Adams v. State*, 397 S.W.3d 760, 764 (Tex. App.—Houston [14th Dist.] 2013, no pet). "An analysis under these steps requires an examination of the 'totality of the circumstances' surrounding the particular case and a determination of the reliability of the identification." *Barley*, 906 S.W.2d at 33. A defendant bears the burden of showing by clear and convincing evidence both impermissible suggestion and a substantial likelihood of misidentification. *See Barley*, 906 S.W.2d at 33–34; *see also Santos v. State*, 116 S.W.3d 447, 451 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

A pre-trial identification procedure may be impermissibly suggestive based on the manner in which it was conducted or the content of the photographic array. *Barley*, 906 S.W.2d at 33; *Burns v. State*, 923 S.W.2d 233, 237–38 (Tex. App.— Houston [14th Dist.] 1996, pet. ref'd). To amount to the level of suggestiveness made impermissible, the photographic identification procedure must in some way be so defective as to indicate or suggest the photograph that the witness is to identify. *Ward v. State*, 474 S.W.2d 471, 475 (Tex. Crim. App. 1971).

While every photographic array must contain photographs of individuals who fit the rough description of the suspect, it is not essential that all individuals be identical in appearance. *Buxton v. State*, 699 S.W.2d 212, 216 (Tex. Crim. App. 1985); *Colgin v. State*, 132 S.W.3d 526, 532 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). Neither due process nor common sense requires that the individuals in a

photographic array exhibit features exactly matching the accused. *Buxton*, 699 S.W.2d at 216; *Colgin*, 132 S.W.3d at 532. Nor are such practices practical. *Ward*, 474 S.W.2d at 475–76; *see also Broussard v. State*, No. 01-15-00628-CR, 2016 WL 887781, at \*4 (Tex. App.—Houston [1st Dist.] Mar. 8, 2016, pet. ref'd) (mem. op., not designated for publication) ("Some differences in the appearance of individuals are inevitable . . . .").

Notably, "a photographic array is not impermissibly suggestive merely because each photograph can be distinguished in some manner from the photograph of the accused." *Page v. State*, 125 S.W.3d 640, 647 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). A photographic array is not considered impermissibly suggestive unless the defendant is placed with "persons of distinctly different appearance, race, hair color, height or age." *Withers v. State*, 902 S.W.2d 122, 125 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd).

At trial, the complainant testified that on the night of April 10, 2015, he picked up three passengers, two males and a female, in his cab from a restaurant. Although it was nighttime, the light from a streetlight at the restaurant allowed him to see all three passengers before they entered his cab. Appellant sat in the front passenger seat of the cab next to the complainant, and the complainant "had an opportunity to observe [him]" during the approximately fifteen-minute drive to the passengers'

destination. Upon arrival, appellant, who was still seated next to the complainant in the cab, pushed him and grabbed his cellular telephone and wallet.

Although the complainant "tr[ied] to get [his] stuff back" and caught appellant by the back of the cab, the other male passenger, who had also exited the cab, grabbed the complainant from behind. As the other male passenger held the complainant, he looked straight at appellant, who was in front of him and holding a firearm.

The complainant noted that when he initially called for emergency assistance, he identified one of the male passengers from that night as "Spanish [with] . . . tattoos all on his face" and mistakenly stated that the other male passenger was black because he was stressed, under pressure, and scared. The complainant explained that neither of the male passengers in his cab that night was black, rather both were "Spanish with tattoos on [their] face and neck." Further, the "initial description" that the complainant gave to emergency-assistance personnel about the male passenger who had robbed him was that he was "a Latin person with face tattoos."

The complainant explained that following the aggravated robbery, a law enforcement officer contacted him about viewing a photographic array. On April 14, 2015, the complainant met with the officer, who showed him "some pictures." The complainant signed a "Witness Admonishment" form, which instructed him as

21

follows: "[t]he individual who committed the offense may or may not be present"; he was "not required to select any individual and . . . it [was] equally important to clear persons not involved in the crime from suspicion as it [was] to identify persons believed to be responsible for the crime"; "[t]he investigation [would] continue whether or not an individual [was] identified" by him; "[i]ndividuals presented [in the photographic array] may not appear exactly as they did at the time of the incident because features such as head hair, facial hair, and clothing [were] subject to change"; "[i]ndividuals presented w[ould] be positioned in random order"; he was not to "discuss the identification procedure with other witnesses"; "[w]hile participating in the viewing [of the photographic array]," he was not to "speak or make gestures or outcries that may be seen or heard by other witnesses"; "[w]hile participating in the viewing [of the photographic array]," he was not to "look for guidance from the administrator"; "[t]he administrator [was] prohibited from providing feedback to [him] regarding [his] selection or non-selection"; and he, while "viewing . . . [the] photo spread," was to "remain in a position so that no one else including the administrator c[ould] see the photo spread." The law enforcement officer who presented the photographic array to the complainant also explained to him that "if he recognize[d] the guy," then he should circle that individual's photograph.

22

The complainant further testified that he recognized, in the photographic array, appellant as the person who had robbed him and "almost kill[ed] him," "[r]ight away" based on appellant's face. And he stated, "I know that's the guy," indicating appellant. Identifying appellant in court, the complainant explained that appellant was the person who he had identified in the photographic array, who had sat next to him in the front passenger seat of his cab, and who had pointed a firearm at him. None of the other individuals who the complainant had viewed in the photographic array was the person who had robbed him.

Appellant argues that the photographic array viewed by the complainant was impermissibly suggestive because the photograph of appellant in the array "leaps out" as his face and body are "bright yellow" and "the faces and bodies of the other [individuals in the remaining] five photographs are black and white." Appellant further argues that the photographic array was impermissibly suggestive because it was only "one page," contained only six photographs, and the law enforcement officer told the complainant that if he "recognized the guy," then he was to circle that particular individual's photograph. (Internal quotations omitted.)

Here, all of the males pictured in the photographic array were of the same race, were of similar age and size, and had visible tattoos, had similar hairstyles, and wore similar clothing. *See Page*, 125 S.W.3d at 647 (photographic array not impermissibly suggestive where "[a]ll of the men pictured in the array [were]

23

African-American, [were] wearing civilian clothes, ha[d] short black hair, and appear[ed] to be similar in age"); *see also Gorden v. State*, No. 01-16-00088-CR, 2016 WL 6803354, at *6 (Tex. App.—Houston [1st Dist.] Nov. 17, 2016, no pet.) (mem. op., not designated for publication) (photographic array not impermissibly suggestive where all males pictured of same race, of similar age and size, with general facial similarities); *Salinas v. State*, No. 07-00-0093-CR, 2002 WL 1870249, at *10 (Tex. App.—Amarillo Aug. 13, 2002, pet. ref'd) (not designated for publication) ("[T]he fact that all of the photos in the lineup were of Hispanic males is not an indicator that the lineup procedures were impermissibly suggestive; rather, it is an indicator of the opposite proposition—that the lineup procedures were not impermissibly suggestive.").

In regard to the purported yellowish coloring of appellant's photograph, the background of his photograph does not appear to be different from the background of the other photographs, and the lighting in his photograph does not appear to be eye-catching. Further, the faces and bodies of the other five individuals in the photographic array are not "black and white" as appellant asserts, and any slight difference in the coloring of appellant's photograph is insignificant. *See Barley*, 906 S.W.2d at 33–34 (photographic array not impermissibly suggestive where defendant's photograph "taken outside in a yard" and had "a more pinkish tint"); *Page*, 125 S.W.3d at 647 (photographic array not impermissibly suggestive,

24

although background and texture of defendant's photograph "different than the background and texture of some of the other photographs in the array" (internal quotations omitted)); *see also Perez v. State*, No. 01-09-00805-CR, 2010 WL 4056540, at *3 (Tex. App.—Houston [1st Dist.] Oct. 14, 2010, no pet.) (mem. op., not designated for publication) (although defendant asserted "his photo was yellow in color," making it stand out, photographic array not impermissibly suggestive because "even if the [defendant's] photograph had a darker or lighter tint than the other photographs in the array, that [does] not render the photo array impermissibly suggestive").

Further, we note that the complainant testified that he selected appellant's photograph based on appellant's face,[6] not based on the purportedly yellowish color of the photograph. *See Jackson v. State*, No. 01-15-00330-CR, 2016 WL 4487979, at *10 (Tex. App.—Houston [1st Dist.] Aug. 25, 2016, no pet.) (mem. op., not designated for publication) (complainant selected defendant by "look[ing] at the faces" in photographs (internal quotations omitted) (alteration in original)); *Burks v. State*, No. 01-10-00633-CR, 2012 WL 151463, at *4 (Tex. App.—Houston [1st Dist.] Jan. 19, 2012, no pet.) (mem. op., not designated for publication) (complainant

---

6    The complainant testified that he saw appellant before he entered his cab, appellant sat next to him in the front passenger seat of the cab, he "had an opportunity to observe [appellant]" during the approximately fifteen-minute drive, and he looked straight at appellant, as he pointed a firearm at him.

identified defendant based on his recollection of gunman's facial features); *Santos v. State*, No. 01-05-01005-CR, 2007 WL 3040802, at *4 (Tex. App.—Houston [1st Dist.] Oct. 18, 2007, no pet.) (mem. op., not designated for publication) (although defendant argued his photograph "stood out among the others," witnesses testified they identified him based on recollections of offense, not based on characteristics of photograph).

In regard to appellant's complaint about the size of the photographic array, he cites no controlling authority to support his assertion that the array was impermissibly suggestive because it was only "one page" and contained only six photographs. *See* TEX. R. APP. P. 38.1(i); *see also In re C.E.B.*, No. 09-04-128-CV, 2005 WL 1531294, at *4 (Tex. App.—Beaumont June 30, 2005, no pet.) (mem. op., not designated for publication) (although defendant asserted photographic array impermissibly suggestive because it contained only three photographs, he did not cite any authority to support his assertion array must contain certain number of photographs). And we note that Texas courts have repeatedly held that six-photograph arrays, including those presented on a single page, are not impermissibly suggestive. *See, e.g.*, *Barley*, 906 S.W.2d at *33–34 (photographic array consisted of six photographs of black males with similar features); *Mims v. State*, 434 S.W.3d 265, 273 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (photographic array containing six photographs—one of defendant and five of men

matching defendant's general description—not impermissibly suggestive); *Plater v. State*, No. 06-07-00063-CR, 2008 WL 2469055, at \*2–3 (Tex. App.—Texarkana June 20, 2008, no pet.) (mem. op., not designated for publication) (photographic array, consisting of "a single page with six pictures of African-American men, each appearing to be generally of similar ages and stature," not impermissibly suggestive); *Stenson v. State*, No. 03-03-00531-CR, 2005 WL 670552, at \*5–9 (Tex. App.—Austin Mar. 24, 2005, no pet.) (mem. op., not designated for publication) (six photographs on "a one-page photo array" not impermissibly suggestive); *see also Ford v. State*, 794 S.W.2d 863, 866 (Tex. App.—El Paso 1990, pet. ref'd) (three-photograph array not impermissibly suggestive); *cf. Johnigan v. State*, 69 S.W.3d 749, 752 (Tex. App.—Tyler 2002, pet. ref'd) (single photograph array improperly suggestive and viewed with suspicion).

Appellant also complains that the law enforcement officer who presented the complainant with the photographic array told him that if he "recognized the guy" who had robbed him, he was to circle that particular individual's photograph. (Internal quotations omitted.) However, this statement does not constitute evidence that the law enforcement officer presented the photographic array in an impermissibly suggestive manner. *See Barley*, 906 S.W.2d at 33 ("Suggestiveness may be created by the manner in which the pre-trial identification procedure is conducted, for example by police pointing out the suspect or suggesting that a

suspect is included in the line-up or photo array."); *Webb v. State*, 760 S.W.2d 263, 272 (Tex. Crim. App. 1988) ("It is undoubtedly the case that in a substantial number of . . . lineups the identification witness will presuppose that police have some reason to believe one of the participants is the perpetrator"; however, "[t]his fact alone [is not] sufficient to render the lineup impermissibly suggestive . . . ."); *see, e.g.*, *Williams v. State*, No. 03-08-00633-CR, 2009 WL 2059092, at *5–6 (Tex. App.—Austin July 17, 2009, no pet.) (mem. op., not designated for publication) (photographic array not conducted in impermissibly suggestive manner where officer told witness "to take a look at the photos, to look at them carefully, and that if he recognized the person who committed the robbery, to point them out"); *Moore v. State*, No. 2-06-280-CR, 2007 WL 2405126, at *3 (Tex. App.—Fort Worth Aug. 24, 2007, pet. dism'd, untimely filed) (mem. op., not designated for publication) (law enforcement officer's "action in showing the photo lineup to [witness] was not impermissibly suggestive" where officer "asked [witness] if he recognized anybody"); *cf. Stenson*, 2005 WL 670552, at *7 (law enforcement officer's statement "he believed the suspect was in the photo array," standing alone, "insufficient to render [the] pretrial identification procedure impermissibly suggestive").

Further, we note that the complainant, prior to viewing the photographic array, was admonished that "[t]he individual who committed the offense may or may not be present"; he was "not required to select any individual and . . . it [was] equally

28

important to clear persons not involved in the crime from suspicion as it [was] to identify persons believed to be responsible for the crime"; and "[t]he investigation [would] continue whether or not an individual [was] identified."

We conclude that appellant has not met his burden of showing that the pre-trial identification procedure utilized in the instant case was impermissibly suggestive.

As previously noted, to establish that appellant's trial counsel rendered ineffective assistance by not moving to suppress the complainant's pre-trial identification of appellant, appellant must show that if his trial counsel had filed the motion, the trial court would have granted it. *See Wert*, 383 S.W.3d at 753. Further, to establish that his trial counsel rendered ineffective assistance by not objecting to the complainant's in-court identification, appellant must establish that, had his counsel objected, the trial court would have erred in overruling the objection. *See Oliva*, 942 S.W.2d at 732. Here, because appellant cannot show that the pre-trial identification procedure was impermissibly suggestive, he also cannot show that the pre-trial identification was inadmissible or the trial court would have erred in not granting a motion to suppress the complainant's pre-trial identification of appellant or not sustaining an objection to the complainant's in-court identification of him.

Accordingly, we hold that appellant has not established that his trial counsel's performance fell below an objective standard of reasonableness in not filing a motion

to suppress or objecting to the complainant's pre-trial and in-court identifications of appellant.

We overrule appellant's first issue.

### *Extraneous-Offense Evidence*

Appellant next argues that his trial counsel did not provide him with effective assistance during the punishment phase of trial because counsel did not object to the trial court's omission of, or request that the trial court include in its charge, an instruction that the jury "could not consider evidence of extraneous offenses," in assessing punishment, "unless [it] was satisfied that the extraneous offenses had been proven beyond a reasonable doubt." *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1). Appellant further asserts that his trial counsel's failure to do so prejudiced him.

In regard to the admissibility of evidence of extraneous offenses and bad acts in non-capital cases during the punishment phase of trial:

> [E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, *any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.*

30

*See id.* (emphasis added); *see also Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000) (article 37.07, section 3(a)(1) governs admissibility of evidence at punishment phase in all non-capital cases). While extraneous-offense and bad-act evidence is generally admissible under article 37.07, section 3(a)(1), the jury may not consider such evidence in assessing punishment unless it first concludes beyond a reasonable doubt that the defendant committed the offenses or acts. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1); *see also Huizar*, 12 S.W.3d at 484; *Fields v. State*, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999); *Burks v. State*, 227 S.W.3d 138, 149–50 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). When a jury determines beyond a reasonable doubt that the defendant committed the extraneous offenses or bad acts, it may then use the evidence however it chooses in assessing punishment. *Huizar*, 12 S.W.3d at 484; *Fields*, 1 S.W.3d at 688.

When evidence of extraneous offenses or bad acts is admitted during the punishment phase of a trial, the trial court *must* instruct the jury that the evidence may only be considered if the State proves the commission of the extraneous offenses or bad acts beyond a reasonable doubt. *See* TEX. CRIM. PROC. CODE ANN. art. 36.14 (Vernon 2007) (trial court shall instruct jury on law applicable to case); *Huizar*, 12 S.W.3d at 483–84 (article 37.07, section 3(a)(1) constitutes law applicable to non-capital punishment cases and trial courts must sua sponte instruct juries on reasonable-doubt standard); *Burks*, 227 S.W.3d at 150 (when evidence of

extraneous offenses or bad acts introduced in punishment phase of non-capital trial, trial court has independent duty to charge jury pursuant to article 37.07, section 3(a)(1)). This is because, absent such an instruction, a jury might apply a standard of proof less than reasonable doubt in its determination of the defendant's connection to such offenses and bad acts, contrary to article 37.07, section 3(a)(1). *Huizar*, 12 S.W.3d at 484.

Appellant asserts that Deputy Roush's testimony about his "alleged gang affiliation" constituted extraneous-offense evidence and his trial counsel rendered ineffective assistance in not requesting that the trial court instruct the jury pursuant to article 37.07, section 3(a), and in not objecting to the trial court's omission from its charge of an article 37.07, section 3(a) instruction.

Here, we need not address whether appellant's trial counsel's performance fell below an objective standard of reasonableness[7] because even were we to conclude that trial counsel's performance was deficient,[8] appellant has not shown that he was prejudiced by his counsel's presumed deficient performance.

---

[7] We also need not address whether appellant was actually entitled to article 37.07, section 3(a) instruction in the instant case. *See* TEX. R. APP. P. 47.1. For purposes of this opinion, we will presume that he was so entitled.

[8] *But see Gholson v. State*, 5 S.W.3d 266, 273 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) ("Failure to request an instruction on the burden of proof required for consideration of extraneous offenses during the punishment phase of trial is not necessarily ineffective assistance of counsel."); *Poole v. State*, 974 S.W.2d 892, 903 (Tex. App.—Austin 1998, pet. ref'd); *Ryan v. State*, 937 S.W.2d 93, 104 (Tex. App.—Beaumont 1996, pet. ref'd).

An appellate court will not reverse a conviction for ineffective assistance of counsel at the punishment phase of trial unless the defendant shows prejudice as a result of deficient attorney performance. *See Wiggins v. Smith*, 539 U.S. 510, 534, 123 S. Ct. 2527, 2542 (2003); *Rivera v. State*, 123 S.W.3d 21, 32 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Thus, in order to prove his claim of ineffective assistance of counsel, appellant, in addition to establishing a deficiency in his counsel's performance, must show that a reasonable probability exists that the jury's assessment of his punishment would have been less severe in the absence of counsel's deficient performance. *Bazan v. State*, 403 S.W.3d 8, 13 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *Rivera*, 123 S.W.3d at 32; *see also Ex parte Rogers*, 369 S.W.3d 858, 863 (Tex. Crim. App. 2012) (defendant "must prove that there is a reasonable probability that, but for counsel's errors, the sentencing jury would have reached a more favorable verdict" (internal quotations omitted)). Our prejudice analysis turns on whether counsel's deficiency made any difference to the outcome of the case. *Riley v. State*, 378 S.W.3d 453, 458 (Tex. Crim. App. 2012). It is not enough to show that trial counsel's errors had some "conceivable" effect on the outcome of the punishment assessed; the likelihood of a different result must be "substantial." *Harrington v. Richter*, 562 U.S. 86, 104, 112, 131 S. Ct. 770, 787, 792 (2011); *see also Ex parte Rogers*, 369 S.W.3d at 863; *Goody v. State*, 433 S.W.3d 74, 81 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

The jury assessed appellant's punishment at confinement for thirty-five years.[9] And the evidence supporting the jury's sentence is overwhelming. Initially, we note that the jury had before it, when assessing punishment, the evidence presented in the guilt phase of trial. Further, during the punishment phase of trial, appellant stipulated that he had been previously charged with two juvenile offenses of theft, disposed of on July 24, 1998; charged with the juvenile offense of theft, disposed of on January 22, 1998; charged with the juvenile offenses of burglary of a habitation and possession of a controlled substance, disposed of on December 30, 1999; convicted of the misdemeanor offense of assault on a family member on July 14, 2006; convicted of the misdemeanor offenses of theft and possession of a controlled substance on August 8, 2006; convicted of the misdemeanor offense of criminal trespass on December 1, 2006; convicted of the misdemeanor offense of "possession of inhalant paraphernalia" on April 12, 2007; convicted of the felony offense of robbery on June 11, 2007 and sentenced to two years confinement; convicted of the misdemeanor offense of criminal trespass on September 25, 2009;

---

[9] Because appellant pleaded true to, and the jury found true, the allegations in two enhancement paragraphs that he had twice been previously convicted of felony offenses, appellant was subject to the habitual-offender punishment range of confinement for not less than twenty-five years and not greater than ninety-nine years or life. *See* TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp. 2017); *see also id.* § 29.03(b) (aggravated robbery first-degree felony offense).

and convicted of the felony offense of robbery on March 8, 2010 and sentenced to five years confinement.

Stephanie Villareal, appellant's wife, also testified during the punishment phase of trial that he had "committed several crimes since" January 2003, when their relationship began. And he had "been to prison twice" since that time. Further, appellant had assaulted her, "the police were called out," and he was "now facing charges for assaulting [her]."

Under these circumstances, appellant has not shown that but for his trial counsel's deficient performance, the jury's assessment of his punishment would have been less severe than confinement for thirty-five years. *See Bazan*, 403 S.W.3d at 13; *see also Donald v. State*, 543 S.W.3d 466, 486–87 (Tex. App.—Houston [14th Dist.] Feb. 27, 2018, no pet.) (defendant did not show but for counsel's deficient performance, sentencing jury would have reached more favorable verdict than confinement for seven years where jury heard evidence of lengthy criminal history); *Martinez v. State*, 313 S.W.3d 358, 369 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (no egregious harm from omission of beyond-reasonable-doubt instruction in part because jury would have likely assessed same life sentence in light of defendant's lengthy criminal history, including several convictions as juvenile); *cf. Brown v. State*, No. 12-01-00117-CR, 2002 WL 1338611, at *11 (Tex. App.—Tyler June 18, 2002, pet. ref'd) (not designated for publication) (defendant did not

establish prejudice as result of counsel's failure "to request a jury instruction that the State must prove extraneous offenses beyond a reasonable doubt" despite jury assessing "maximum punishment").

Accordingly, we hold that appellant has not established that but for his trial counsel not requesting that the trial court include in its charge, or not objecting to the trial court's omission of, an instruction, pursuant to article 37.07, section 3(a), there is a reasonable probability that the jury's assessment of his punishment would have been less severe.

We overrule this portion of appellant's third issue.

**Modification of Judgment**

We note that the trial court's written judgment does not accurately comport with the record in this case in that it states "N/A," meaning "not applicable," in regard to appellant's "[p]lea to 1st [e]nhancement [p]aragraph" and "[p]lea to 2nd [e]nhancement/[h]abitual [p]aragraph." Further, the judgment states "N/A" in regard to the jury's "[f]indings on 1st [e]nhancement [p]aragraph" and "[f]indings on 2nd [e]nhancement/[h]abitual [p]aragraph." *See Dromgoole v. State*, 470 S.W.3d 204, 226–27 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (judgment incorrectly reflected trial court's finding on enhancement paragraph was "n/a," meaning "not applicable" (internal quotations omitted)).

36

The record reveals that appellant actually pleaded "[t]rue" to the allegations in two enhancement paragraphs that he had twice been previously convicted of felony offenses. And the jury found the allegations in both enhancement paragraphs to be "true."

"[A]ppellate court[s] ha[ve] the power to correct and reform a trial court judgment 'to make the record speak the truth when [they] ha[ve] the necessary data and information to do so, or make any appropriate order as the law and nature of the case may require.'" *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (quoting *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd)). Although neither party addresses the inconsistency between the trial court's written judgment and the record in this case, we, based on our review, conclude that the portion of the judgment regarding appellant's pleas to the allegations in the two enhancement paragraphs and the jury's findings do not accurately comport with the record. *See Asberry*, 813 S.W.2d at 529–30 (authority to correct incorrect judgment not dependent upon request of any party).

Accordingly, we modify the trial court's judgment to reflect that appellant pleaded "[t]rue" to the "1st [e]nhancement [p]aragraph" and the "2nd [e]nhancement/[h]abitual [p]aragraph." We further modify the trial court's judgment to reflect that the jury found the allegations in the "1st [e]nhancement [p]aragraph" and the "2nd [e]nhancement/[h]abitual [p]aragraph" to be "true." *See*

37

TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Torres v. State*, 391 S.W.3d 179, 185 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (modifying judgment to reflect defendant pleaded "true" to allegations in enhancement paragraphs).

## Conclusion

We affirm the judgment of the trial court as modified. We dismiss all pending motions as moot.

Terry Jennings
Justice

Panel consists of Chief Justice of Radack and Justices Jennings and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).